Briscoe et al. *v.* Anketell.

WILLIAM BRISCOE et al. *vs.* JOHN ANKETELL.

It has been heretofore settled by this court that under the 16th section of the act of limitations of 1844, (Hutch. Code, 832,) a promise or acknowledgment was not sufficient to prevent the running of the statute, unless made in writing, or on presentation of the claim sued on; and that a promise or acknowledgment of one of several makers would not charge the comakers. *Foute* v. *Bacon*, 24 Miss. 156, cited and confirmed.

It is well settled that statutes of limitations pertain to the remedy, and not to the essence of a contract; and it is within the power of the legislature to regulate the remedy and modes of proceeding in relation to past as well as future contracts. *Held*, that this power is subject only to the restriction, that it cannot be exercised so as to take away all remedy upon the contract, or to impose upon its enforcement new burdens and restrictions, which materially impair the value and benefit of the contract.

The legislature has the power to shorten the period of limitation of actions; to change existing rules of evidence, and to prescribe new rules of evidence and judicial procedure, — all to affect both past and future rights of action.

Such acts are held to be invalid when they deprive the party of all remedy by changing the period of limitation, or destroying the validity of the proof on which the claim rested, and rendering it impossible to establish the right.

As the law was understood, prior to the act of 1844, a new promise being made before a claim was barred by the statute then existing, did not create a new and substantive contract, but was evidence merely of an existing liability.

It was the manifest intention of the legislature to establish, by the 16th section of the act of 1844, a new rule of evidence; whether to revive a cause of action already barred, or continue one not barred.

It was doubtless the intention of the legislature that the new rules established in that act should apply, so far as could be, to causes of action which had already commenced to run; and it is expressly provided in the 18th section, that the act should not stop the running of the limitations contained in any other act, where the same had commenced before its passage.

The limitation continued to run from the maturity of the notes in controversy for the period of six years, and during that time and afterwards, they became subject to the provisions of the act of 1844. *Held*, that this rule applies to all causes of action existing at the time of the passage of the act, except in cases where its application would deprive the plaintiff of all remedy by shortening the period of limitation so as to cut off all right of action, or by destroying the validity of the evidence upon which the establishment of the demand depended.

IN error from the circuit court of Claiborne county; Hon. Stanhope Posey, judge.

On the 30th Sept. 1846, Anketell filed his declaration in assumpsit, in the Claiborne circuit court against Logan, Wm. Briscoe, and P. Briscoe, on three promissory notes: the first dated March 8, 1836, for $5,760.62, payable Feb. 7, 1840; the second, of same date, for same amount, payable Feb. 7, 1839; the third, dated Feb. 10, 1838, for $3,837.09, payable Feb. 10, 1839; on which notes $13,886 had been paid.

To this declaration, the defendants pleaded non assumpsit, the statute of limitations of six years, and payment.

At April term, 1851, the death of Parmenas Briscoe was suggested, and the cause was subsequently revived against his executors, D. Harrison and W. P. Briscoe.

At April term, 1853, the death of Logan was suggested, and the case dismissed as to him.

The cause then proceeded to trial, and a verdict and judgment were rendered against the plaintiffs in error for $2,292.95.

The plaintiff read in evidence to the jury the three notes sued upon, with the credits indorsed thereon.

The plaintiff then introduced John Murdock as a witness, who testified that the notes sued on had been in his possession as agent of Anketell, and that all the payments credited on them had been made to him by Logan, except that of February, 1842, which was made by Rembret, whose note had been transferred by Logan to Anketell, to be credited on these notes when collected. That a few days or weeks after said payment in February, 1842, witness furnished Logan with a statement of the amount due on said notes, which Logan shortly after admitted to be just; that afterwards, in the winter of 1842 and 1843, witness applied to Logan for payment of the balance, and he promised to pay it in about two months from that time, and admitted a balance to be due.

The plaintiffs in error excepted to the admission of said testimony for the reasons: first, that the promises or admissions of Logan were not evidence against them; second, that at the times of said promises and admissions, said notes were not presented to Logan; and, third, because the testimony was irrelevant.

The court overruled the objections, and allowed the testimony to go to the jury, to which plaintiffs in error excepted.

No other evidence was introduced on either side.

At the request of the plaintiff the court gave the following instruction to the jury: —

" If the jury believe, from the evidence, that within six years before the institution of this suit, Logan, one of the makers of the notes, made payments thereon to Murdock as agent of plaintiff, and admitted that a balance was due on the notes which he promised to pay, such promise is sufficient to take the case out of the statute of limitations as to the defendants."

The defendants asked the two following instructions, the first of which was refused, and the second given by the court: —

1. " That unless the jury believe, from the evidence, that the notes sued on were presented to Logan, at the times testified to by Murdock, then Logan's admissions made at said times are not sufficient to take the case out of the statute of limitations." Which was refused.

2. " That no partial payment made by Logan is sufficient evidence to take the case out of the statute of limitations, as to the present defendants." This was given.

The jury found a verdict for the plaintiff, and the defendants prayed a writ of error to this court.

*John B. Coleman,* for appellants.

A witness (Murdock) testified that as the agent of Anketell he had the notes sued on in his possession, and had received all the payments made on them by Logan. That after the date of the last payment he furnished L. with a statement of the balance due, which L. admitted to be just. Afterwards, in the winter of 1842 or 1843 witness applied to Logan for payment of the balance, and Logan promised to pay it in about two months, and admitted a balance to be due.

The defendants below objected and excepted to the admission of the testimony of Murdock for two reasons: First, because the promises or admissions of Logan were not evidence against, or binding upon them; Second, because at the times of said alleged promises and admissions, the notes sued on were not presented to Logan.

Was the evidence of Murdock admissible to charge the plain-

tiffs in error? We hold that it was not; and we so hold for the reason that the promises and admissions of Logan were only binding on himself, and could fix no liability upon the other parties to the notes. This principle, we consider, has been conclusively settled by this court. *Foute et al.* v. *Bacon*, 2 Cushm. 156.

It is argued by the counsel of defendant in error, that the foregoing decision has no application here, for the reason that there, the promise relied on to take the case out of the operation of the statute, was made after the passage of the act of 1844, while in the case at bar, it was made before the passage of that act.

To this, we have two replies:

1. This case must be tried and decided, so far as this question is concerned, under the act of 1844.

The suit, it will be borne in mind, was commenced on the 30th of September, 1846, more than two years after the passage of the act.

It is held by this court, and the decision is fully sustained by the adjudications of the courts of other States, that statutes of limitation only affect the remedy upon the contract, and not the contract itself. *Davidson* v. *Morris*, 5 S. & M. 571.

It is equally well settled, that the remedy in existence at the time a suit is instituted, governs it, not the remedy which may have existed when the contract was entered into.

Thus, the imparlance law of 1840 has been repeatedly held to apply to, and govern the trial of all suits instituted after its passage, no matter at what time the contracts sued upon were made.

So likewise with the pleading act of 1850, which governs the proceedings in all cases commenced after its passage.

So, too, in relation to the admissibility in evidence of certified copies of recorded instruments.

The act of 1837 authorized such copies to be given in evidence, without accounting for the absence of the original.

The act of 1840, repealed the act of 1837, thus rendering copies inadmissible, until the absence of the original was accounted for.

The act of 1844, repealed that of 1840, and revived or reënacted that of 1837.

Now in the different cases that arose while these respective statutes were in force, this court held that the particular law which was in force at the time of the trial governed the case. *Chaplain* v. *Briscoe*, 5 S. & M. 207; *Hayden* v. *Morse*, 1 Ib. 606.

All these decisions rest upon the principle which we have asserted above, that the remedy in existence, when a suit is instituted or tried, controls and governs it.

The defendant in error cannot complain of any hardship in this case. His last note did not mature till the 7th of February, 1840, and consequently was not barred until the 7th of February, 1846; so that he had nearly two years, after the passage of the act of 1844, within which to institute his suit.

We submit, then, that as the act of 1844 affects only the remedy, and as the remedy in force at the time of its commencement governs the trial of the suit, this case is within the provisions of the act of 1844, and is therefore settled by the decision in the case of *Foute et al.* v. *Bacon et al.* 2 Cushm. 156.

2. Putting the act of 1844 entirely out of the question, supposing it had never been passed, we hold that upon the principles settled by this court, in the construction of the acts of limitation, the promises or acknowledgments of Logan were not binding on the plaintiffs in error.

It is argued by counsel of defendant in error, that until the passage of the act of 1844, the promise or acknowledgment of one joint maker of a note was sufficient to take the case out of the statute as to his co-makers; that this was the law of this State, until changed by the act of 1844.

How, we ask, was this the law of this State? Had we any statute to that effect? No. But, say the counsel, the English authorities are all to that effect. To this, we reply, that English decisions and adjudications do not constitute the law of Mississippi. They are doubtless entitled to, and usually have great weight, but they are not binding upon our courts. Only then, so far as they are sanctioned by this court, can they be said to indicate what our law is.

Now it is probable that there is no one question, upon which

31 *

this court occupies a more antagonistic position to the English courts, than this very one of the construction of the statutes of limitation.

In England, these statutes have been looked upon with disfavor by the courts; and all their decisions upon them seem to have had in view their evasion or nullification.

In this State, on the contrary, the leaning of the court has been to uphold and sustain them. They are here considered statutes of repose, dictated by sound policy, and entitled to the same rules of construction which are applied to other statutes.

In England, a war of judicial legislation has been waged against them.

Now, the court has determined to engraft upon them no exceptions, disabilities, or equities, not embodied in them by the legislature.

The English authorities, with entire unanimity, hold that a payment upon a promissory note takes it out of the operation of the statute, which, say they, only commences running from the date of the last payment. Why? Because of the presumption arising from the payment, that the party making it admitted the note to be a valid claim against him.

The English authorities are equally unanimous in holding that a promise or acknowledgment by one of several joint makers of a promissory note, will take the case out of the operation of the statute as to the other joint makers. Why? Because of the presumption arising from the promise of one of the makers, that the note was unpaid, that neither he nor any of the other partners had paid it.

*W. S. Wilson*, for appellee.

I. The promises of Logan were made to Murdock the agent, before the bar of the statute had attached. The question is presented, therefore, whether the promises of one of several makers of a note, the liability of all still subsisting, were binding upon the other parties, under the law as it stood prior to the act of 1844. That they were, is shown by two cases decided by this court, namely, *Montgomery* v. *Dillingham*, 3 S. & M. 658; *Bacon* v. *Foute*, 24 Miss. R. 163.

The principle on which such promises are received in evidence to affect third parties is stated by Professor Greenleaf. 1 Vol. Evid. 213, § 174.

The parties having a joint interest, and being in privity, the promises and admissions of one are evidence to bind others; because they stand to each other, in this respect, in a relation similar to that of existing partners.

The same rule of evidence is applied in criminal cases, as the same author shows, 1 Vol. Evid. 126, § 111, as if several be engaged in a conspiracy, whatever is said or done by one in furtherance of the common design, is evidence against the others.

So well is this rule understood, and so firmly established, that Chief Justice Best has not hesitated to say, that if the promises and admissions of one joint maker were not received in evidence to charge the others, it would be an anomaly in the law. *Parham* v. *Raynal*, 2 Bing. 306.

The decisions on this subject are believed to be uniform, from the leading case of *Whitcomb* v. *Whiting*, 2 Doug. R. 652, decided by Lord Mansfield, in 1781, down to the present time.

The cases have qualified the rule in two instances, but they consist perfectly with the rule itself. As, for example, if the statute has already attached the bar, and afterwards one promises, the others are not bound; or if the joint liability is severed by the death of one, his representatives are not bound by a promise of the survivor, and *e converso.* *Bell* v. *Morrison,* 1 Peters, R. 371; *Atkins* v. *Tredgold,* 2 Barn. & Cres. R. 23.

It is confidently submitted that no case can be produced in which it has been decided, that the promise of one joint maker would not remove the bar as to the others, where the debt was a subsisting one, and the parties all alive at the time the promise was made. I of course will be understood as speaking of decisions on the statutes of limitations as they stood before the passage of the act 9 George 4, in England, and similar statutes in this country, such as ours of 1844, requiring promises in writing to charge any party.

I give below a list of cases, English and American, to the

point. *Whitcomb* v. *Whiting*, 2 Doug. R. 652; *Parham* v. *Raynal*, 2 Bing. R. 306; *Burleigh* v. *Stott*, 8 Barn. & Cres. R. 36; *Wyatt* v. *Hodson*, 8 Bing. R. 309; *Brancham* v. *Wharton*, 1 Barn. & Ald. R. 467; *Holme* v. *Green*, 1 Stark. R. 488; *Atkins* v. *Tredgold*, 2 Barn. & Cres. R. 23; *Clark* v. *Hopper*, 10 Bing. R. 480; *Pean* v. *Hunt*, 10 Barn. & Cres. R. 122; *Mauderston* v. *Robertson*, 4 Man. & Ryl. R. 410; *Channel* v. *Ditchburn*, 5 Mees. & Welsb. R. 494, (Exchequer, Ld. Ch. Brougham); *Pritchard* v. *Draper*, 1 Russ. & Mylne, R.; *White* v. *Hale*, 3 Pick. R. 291; *Martin* v. *Root*, 17 Mass. R. 222; *Hunt* v. *Brigham*, 2 Pick. R. 581; *Frye* v. *Barker*, 4 Ib. 382; *Britz* v. *Fuller*, 1 McCord, R. 541; *Johnson* v. *Beardslee*, 1 Johns. R. 3; *Bound* v. *Lathrop*, 4 Conn. R. 336; *Coit* v. *Tracy*, 8 Ib. 268; *Getchell* v. *Heald*, 7 Greenl. R. 26; *Owings* v. *Low*, 5 Gill & Johns. R. 144; *Patterson* v. *Choate*, 7 Wend. R. 441; *McGutin* v. *Oliver*, 2 Hawk. R. 209; *Cady* v. *Shepherd*, 11 Pick. R. 400; *Van Reymsdyke* v. *Kane*, 1 Gall. R. 635; *Pike* v. *Warren*, 3 Shepley, R. 390; *Dinsmore* v. *Dinsmore*, 8 Ib. 433; *Smith* v. *Ludlow*, 6 Johns. R. 267; *Sigourney* v. *Weatherby*, 6 Met. R. 533; *Shelton* v. *Cocke*, 3 Munf. R. 191; *Roosevelt* v. *Mark*, 6 Johns. Ch. R. 292; *Cox's Executor, &c.* v. *Bailey*, 9 Georgia R. 467; Angell, Limitations, 270.

II. The second proposition presented by the bill of exceptions is, that the evidence of the witness ought not to have been received, on the trial, to show Logan's promises, because it was not proved, that the notes themselves were presented to Logan at the time the promises were made.

Such presentment, it was argued at the trial, was required as a rule of evidence by the 16th section of the act of limitations of 1844, which enacted that promises to save the bar should be in writing; but provided that they might be made without writing, if it were proved that the very claim sued on was presented and acknowledged, &c. Hutch. Dig. 832.

It will be remembered that the new promises relied on in this case were made in 1842 and 1843, before the statute referred to was passed.

Surely, if that statute were less plain and explicit than it is, the court would not, unless constrained by peremptory lan-

guage, interpret it to have a retrospective effect, and apply to past promises and contracts, under which rights were vested and established.

But the language of the statute admits of no other construction, than one directly the opposite of that contended for by the plaintiffs in error. The language is, " no promise or acknowledgment . . . shall operate to revive at law any action . . . from the bar and limitations contained in the provisions of this act, unless," &c.

But the evidence was not offered to remove " the bar and limitations contained in " the act of 1844. It was offered to remove the bar created by the act of 1822.

The term of limitations prescribed by the act of 1844, for suits on notes, (six years,) commencing with the passage of the act February 24, 1844, had not elapsed when the suit was brought in September, 1846. The defendants sought to enforce the old statute, under the provisions of the 18th section of the act of 1844.

It must, therefore, be as plain as any legal proposition can well be, that the 16th section of the act of 1844, neither in its letter or its spirit, had any application whatever to the case; that the section referred to was altogether prospective, furnishing a rule of evidence only for cases that might arise after the enactment of the law.

Mr. Justice HANDY delivered the opinion of the court.

On the 30th day of September, 1846, the defendant in error brought this action in the circuit court of Claiborne county, against Andrew B. Logan, William Briscoe, and Parmenas Briscoe, upon three joint and several promissory notes, executed by them; the first of which had become due on the 7–10 February, 1839, the second on the 7–10 February, 1839, and the third on the 7–10 February, 1840. The defence was founded on the statute of limitations of six years.

On the trial, at April term, 1853, the plaintiff read in evidence the notes sued on, and introduced, as a witness, John Murdock, who testified that a few days or weeks after the first February, 1842, he furnished the defendant, Logan, with a state-

ment of the amount due on the notes, which he admitted to be just; that afterwards, in the winter of 1842 and 1843, witness applied to Logan for the balance due on the notes, and Logan promised to pay it in about two weeks from that time, and admitted a balance to be due. The defendants objected to this evidence: 1st. Because the admissions and promises of Logan were not evidence against the other makers of the notes; and, 2d. Because the alleged promises and admissions were not made upon presentation of the notes to Logan at the time; which objection was overruled, and the evidence permitted to go to the jury; and the defendants excepted. Logan died pending the suit, and it abated as to him.

At the instance of the plaintiff the court gave the following instruction to the jury: —

"If the jury believe, from the evidence, that within six years before the institution of this suit, Logan, one of the makers of the notes, made payment thereon to John Murdock, as agent of the plaintiff, and admitted that a balance was due upon the notes which he promised to pay, such promise is sufficient to take the case out of the statute of limitations, as to the defendants," (William and Parmenas Briscoe).

And the following instruction asked by the defendants was refused: —

"That unless the jury believe, from the evidence, that the notes sued on were presented to Logan at the times testified to by Mr. Murdock, then Logan's admissions, made at said times, are not sufficient to take the case out of the statute of limitations."

The verdict and judgment being for the plaintiff, the defendants have prosecuted this writ of error.

The points made in the court below present the question here, whether the promises and acknowledgments made by Logan are sufficient to charge the comakers of the notes: 1st. In reference to the' necessity of presentation at the time of the promise; and, 2d. In reference to the binding force of the promise of Logan upon his comakers of the note.

Both of these points were presented in the case of *Foute et al.* v. *Bacon*, 24 Miss. R. 156, and it was there held, that under the

provisions of the 16th section of the act of 1844, a promise or acknowledgment was not sufficient to prevent the running of the statute, unless made in writing or on presentation of the claim sued on; and, 2d. That the promise or acknowledgment of one of several makers would not charge the comakers.    That case is conclusive, both against the admissibility and sufficiency of the evidence in this case.    But it may not be improper to consider some objections that are presented to the soundness of this view of the subject, under the facts of this case.

First.  It is said that as the new promise in this case was made before the passage of the act of 1844, that act cannot be interpreted to have a retrospective effect, and apply to defeat rights which were vested before its enactment.

It is too well settled to admit of question at the present day, that statutes of limitation pertain to the remedy and not to the essence of the contract; and that it is within the power of the State legislatures to regulate the remedy and modes of proceeding in relation to past as well as future contracts.  This power is subject only to the restriction, that it cannot be exercised so as to take away all remedy upon the contract, or to impose upon its enforcement new burdens and restrictions which materially impair the value and benefit of the contract.    *Bronson* v. *Kinzie*, 1 How. (U. S.) 315; *McCracken* v. *Hayward*, 2 Ib. 612.    And accordingly it has been held to be within the undoubted competency of the State legislatures, to shorten the periods of limitation of actions, to change existing rules of evidence, and to prescribe new rules of evidence and judicial procedure, all to affect both past and future rights of action.  *Sturgis* v. *Crowninshield*, 4 Wheat.    *Jackson* v. *Lamphire*, 3 Peters, R. 290; 1 How. R. 315.  Such acts are held to be invalid when they deprive the party of all remedy, by changing the period of limitation, or destroying the validity of the proof on which his claim rested, and rendering it impossible to establish his right.

In England, it has been held that the statute of limitations, known as Lord Tenterden's act, which contains provisions analogous to the statute under consideration, applies to a parol acknowledgment made before the passage of the act.    *Towler*

v. *Chatterton,* 6 Bing. 258, (19 Eng. C. L. Rep. 76) ; *Ansell* v. *Ansell,* 3 Carr. & Payne, R. 563, (14 Eng. C. L. R. 451). And it has also been held that the statute did not make any alteration in the legal construction to be put upon acknowledgments or promises made by defendants, but merely required a different mode of proof, substituting the certain evidence of a writing signed by the party chargeable, instead of the insecure and precarious testimony to be derived from the memory of witnesses. *Haydon* v. *Williams,* 7 Bing. R. 163, (20 Eng. C. L. Rep. 86).

Applying these principles to the facts of this case, it appears that two of the notes sued upon were not barred until February, 1845, and the third was not barred until February, 1846, so that, without the right of action being interfered with by the act of 1844, the plaintiff had nearly twelve months as to two of the notes, and nearly two years as to the third, to bring suit. He had, therefore, ample time to bring his suit, as his right of action stood upon his notes, before they could come under the operation of the act of 1844, and it cannot be said that he was deprived of all remedy by the provisions of that act.

It cannot be said that the new promise constituted a new and valid contract which was available to the plaintiff under the law as it then stood, and that the act of 1844 impaired the obligation of that contract. For, in the first place, it is settled that, as the law was understood to be prior to that act, the new promise, being made before the notes were barred by the statute then existing, did not create a new and substantive contract, but was evidence merely of an existing liability. *Parham* v. *Raynal,* 2 Bing. R. 306, (9 Eng. C. L. Rep. 413) ; *Bell* v. *Morrison,* 1 Peters, R. 360 ; *Ilsley* v. *Jewett,* 3 Met. R. 444. And the action should be brought on the original contract. 16 East, R. 420 ; *Upton* v. *Else,* 12 Moore, R. 303, (22 Eng. C. L. R. 451). Secondly. It was competent, under the rules above stated, for the legislature to introduce a new rule of evidence affecting contracts then existing, provided it did not debar the plaintiff of all remedy upon his contract ; and it is above shown that he had ample time to pursue his remedy before the notes were affected by the new rule of evidence established by the act of 1844.

But it may be urged, that as the new promise in this case was made before the notes were barred by the statute, it was not a promise to revive a cause of action already barred, but to continue and give new vigor to one then in force, and, therefore, is not within the statute.

The language of the statute is, " No promise or acknowledgment, either express or implied, shall operate to revive at law any action, or cause of action, from the bar and limitations contained in the provisions of this act, unless such promise or acknowledgment be in writing and signed by the party to be charged thereby : Provided, however, that the promise or acknowledgment, to save the bar, may be made without writing, if it be proved that the very claim sued on was presented and acknowledged to be due and unpaid." Hutch. Code, 832, § 16.

It is manifest that the language here employed is not very precise or even accurate. The term "revive," in its strict import, would apply to demands already barred. But the language, " no promise shall operate to revive any action from the bar and limitations," &c., is too loose to justify the application of critical rules in interpreting it. The last clause of the same section provides that " the promise or acknowledgment to save the bar," &c., " may be made without writing," &c., which language could properly apply only to claims not already barred. Yet it has reference to the same character of demands embraced in the previous part of the section. In view of the entire section, we think it was the manifest intention of the legislature to establish a new rule of evidence, whether to revive a cause of action already barred, or to continue one not barred.

Secondly. It is insisted that the new promise was sufficient to take the case out of the statute, because the act of 1844 extended only to " the bar and limitations contained in the provisions of that act," and the new promise was relied upon to remove the bar created by the act of 1822.

The period of limitation as to actions on promissory notes is the same in both acts. It was doubtless the intention of the legislature, that the new rules established in the act should apply, so far as could be, to causes of action which had already

commenced to run; and it is expressly provided in the 18th section, that the act should not stop the running of the limitations contained in any other act, when the same had commenced before its passage. It is, therefore, manifest that the limitation upon the notes in this suit did not commence running anew under the provisions of the act of 1844, but that it continued to run from the maturity of the notes for the period of six years, and that, during that time and afterwards, they became subject to the provisions of that statute. And this rule would apply to all causes of action existing at the time of the passage of the act, except in cases where its application would deprive the plaintiff of all remedy, by shortening the period of limitation so as to cut off all right of action, or by destroying the validity of the evidence upon which the establishment of his demand depended.

Under these views of the subject, the court below erred in admitting the evidence of Murdock, in refusing the instruction asked by the defendants, and in granting that asked by the plaintiff.

The judgment is, therefore, reversed, and the case remanded for a new trial.