# JANUARY SPECIAL TERM, 1866.

## RALPH COFFMAN *et al. v.* THE BANK OF KENTUCKY.

1. OBLIGATION OF CONTRACTS.—The obligation of a contract imports, for the most part, its binding force upon the obligor to perform the duty agreed on, according to the nature and effect of the contract. It relates to the performance rather than to a breach of the contract.

2. NATURE, CONSTRUCTION, AND EFFECT OF CONTRACTS: REMEDIES FOR BREACH OF: BY WHAT LAWS GOVERNED: POWER OF LEGISLATURE OVER.—The nature, construction, and effect of a contract are governed by the laws existing when and where it was made, or where it is, by its terms, to be performed; and in this respect, the rights of the parties under the contract are beyond the legislative power. The remedy pertains to the modes of proceeding existing when and where the enforcement of the contract may be sought; and these, with certain restrictions and limitations, are subject to be modified and changed by the legislature.

3. REMEDIES FOR BREACH OF CONTRACTS: LIMITATIONS ON POWER OF LEGISLATURE OVER.—Where the remedy existing at the time of making the contract becomes an essential part of it, as where remedies are specially provided by the terms of the contract, or by provisions of law securing particular rights and remedies, the legislature has no power to change. *Bronson* v. *Kinzie,* 1 How. 316, 317; *Green* v. *Biddle,* 8 Wheat. 1.

4. REMEDIES FOR BREACH OF CONTRACT: RESTRICTIONS ON POWER OF LEGISLATURE OVER.—Acts of the legislature preventing all legal remedies on contracts, or so changing and obstructing them as materially to impair the value and benefit of the contract as it existed when made, are violations of the contract and within the prohibition of the Constitution of the United States. 15 How. 319; 1 How. 316, 317; 2 How. 612, 613; 6 S. & M. 523; 8 Mass. 430; 9 S. & M. 314; 28 Miss. 371.

5. "STAY LAWS" OF MISSISSIPPI OF AUGUST, 1861, AND DECEMBER, 1865: CHARACTER OF: UNCONSTITUTIONAL.—The acts of the legislature of Mississippi of August, 1861, and December, 1865, contain no provision in relation to the process and course of judicial procedure, nor do they modify existing remedies or provide new ones; they prevent all proceedings in the enumerated actions, take away all remedies, with few exceptions, and close the Courts for a period exceeding two years, and thereby materially impair the value and benefit of contracts; and are unconstitutional.

6. POWER OF THE LEGISLATURE TO SUSPEND THE LAWS.—The legislature has the power to suspend the laws by virtue of the 15th section of the declaration of rights. But this power must not be so exercised as to defeat other specific provisions of the constitution, and to violate individual rights therein positively guaranteed.

THE opinion of the court sets forth the facts, and the mode and manner in which the questions at issue were brought before the court.

*C. E. Hooker* for plaintiff in error.

*Wm. Yerger* and *Jno. D. Freeman* for defendant in error. The arguments of counsel are not on file.

HANDY, C. J., delivered the opinion of the court.

This case is submitted to the court on a motion, made in behalf of the plaintiff in error to continue it, in virtue of the acts of the legislature of August 5th, 1861, and December 1st, 1865, each entitled "an act to modify the collection laws of this State." The judgment in the court below was against the plaintiff in error, the acceptor, drawer, and endorser of a bill of exchange, and in favor of the defendant in error, the holder thereof; and it is contended in support of the motion, that this court cannot now proceed to judgment in the case, because of the operation of these acts of the legislature.

In considering the present motion, it is necessary to refer only to the latter act, since its provisions appear to repeal those of the former act which might be applicable to this case.

The 1st section of the latter act provides "that all laws for the collection of debts on bonds, promissory notes, bills of exchange, open accounts, or any other contract or liability for the payment of money, are hereby suspended until the first day of January, 1868, or until otherwise ordered by law, except in cases of official liabilities; *and provided*, that no creditor shall be deprived of his remedy by attachment or distress, as now provided by law : *Provided*, that the provisions of this act shall not be so construed as to prevent guardians from collecting such parts of debts due their wards as the Probate Court, having jurisdiction of the same, may determine to be necessary to the support and education of such wards."

Section 2 provides "that this act shall not apply to parties who have cases now pending in the Courts. and who agree in open Court to proceed to trial."

Section 5 provides " that this act shall not apply to contracts or liabilities made and entered into after its passage ; *provided* such contracts or liabilities are not founded on indebtedness existing prior to the passage of this act ; nor shall this act apply to debts due to the school funds of the several townships and counties in this State."

And section 7 repeals all acts in conflict with this act.

In opposition to the motion it is insisted, in behalf of the defendant in error, that this act is in violation of the clause of the 10th section of article 1 of the Constitution of the United States—that " no State shall pass any law impairing the obligation of contracts "; and the 19th section of the declaration of rights, prefixed to the constitution of this State, containing the same prohibition to the legislature ; and the 14th section of the same declaration, requiring " that all courts shall be open, and every person for an injury done him in his lands, goods, person, or reputation, shall have remedy by due course of law, and right, and justice, administered without sale, denial, or delay "; and hence, that the act in question is inoperative and void.   We are thus called upon to determine whether or not this act transcends the bounds of the power of the legislature of this State, and is therefore void.

It is argued, by the counsel for the defendant in error, that the legal remedies, existing at the time the contract was entered into, form a part of the contract, and constitute a part of the obligation on the one party, and of the right acquired by the other ; that the *law gives the right to enforce performance by the remedies then in force ;* and that any act of the legislature materially altering those remedies is an impairing of the obligation of the contract, and within the prohibition of the constitution.

This position, though sanctioned by high authority, we cannot regard as sound, to the broad extent in which it is stated.

The " obligation " of a contract imports, for the most part, its binding force upon the obligor to perform the duty agreed on, according to the nature and terms of the contract.   It has reference to the performance, rather than to the consequences of a breach, of the contract.   The essential constituents of the con-

tract are its validity, construction, effect, and discharge, and these are governed by the law in existence at the time it was made, which enters into and forms a part of it, and follows it wherever it may be sought to be enforced.    But the remedy is, for the most part, the act of the law-making power, providing a mode of redress for the wrong occasioned by a breach of the contract.    It does not necessarily constitute a part of the obligation of the contract; and, except in cases of peculiar character, it is subject to the right of modification or repeal which the prerogative of the legislature.    Hence it is a familiar rule that the nature, construction, and effect of a contract are governed by the law existing when and where it was made, or where it is, by its terms, to be performed; and, in this respect, the rights of the parties under the contract are beyond the legislative power.   But the remedy pertains to the *forum;* that is, to the modes of proceeding existing at the time and place at which its enforcement may be sought; and these, with certain restrictions and limitations, are generally held to be subject to the legislative power of the State.

But the position under consideration appears to us, in its breadth, to confound the settled distinctions between *rights* accruing under contracts and *remedies* for their enforcement—distinctions which are founded in the nature of the subject, have always been recognized by the highest courts in this country, and are admitted in the cases which appear to sanction the broad position here contended for.    For, if it be true that the remedies existing at the time of making the contract become a part of it to the extent to give the right to enforce performance by the remedies then in force, it appears to us to lead unavoidably to the conclusion, that no subsequent change could be made by the legislature in the terms of the courts, nor in the pleadings and practice, nor in the time of rendering judgment, nor in presenting appeals or writs of error, nor in the statute of limitations, which would in any way retard the process of enforcing performance of the contract which existed at the time it was made; and the still more untenable consequence would follow, that this remedy would have to be pursued in whatever *forum* a suit might be

instituted, whether at home or in a foreign state. Yet it is admitted, in all these cases, that these are matters within the legislative power, and not within the prohibition of the constitution—an admission which appears to be irreconcilable with the broad rule stated in some of those cases.

It is true there may be cases in which the remedy existing at the time of entering into the contract may become an essential part of it. But these must be cases of peculiar character, and generally they are instances of remedies specially provided by the terms of the contract, or by provisions of law securing particular rights and remedies, rather than cases under the operation of general rules regulating remedies and modes of judicial procedure. Of this character are the cases of *Bronson* v. *Kinzie*, and *Green* v. *Biddle*, 8 Wheat. 1.

But this power of the legislature over remedies is not without restriction; and any legislation which .impairs the value and benefit of the contract, though professing to act upon the remedy, must impair the right intended to be secured by the contract, and come within the evil intended to be prohibited by the constitution. For, though the particular remedy existing at the time of making the contract is not an essential part of it, yet no contract would be of any value without a remedy to enforce it. Its obligation would be nugatory if all remedy to enforce it were taken away, and it would be impaired if the remedy were obstructed and rendered impracticable. The remedy is, therefore, an incident to the contract. And though the party may have no right under the contract to any particular remedy, yet he has a right, at all times, to some adequate and available remedy to enforce it; and that is manifestly within the contemplation of the contract. Hence, it has been held generally by courts and jurists of the highest authority in this country, that acts of the legislature preventing all legal remedies on contracts, or so changing and obstructing them as materially to impair the value and benefit of the contract as it existed when made, are violations of the. contract, and within the prohibition of the Constitution of the United States. We will cite some passages from a few of these decisions.

In *Curran* v. *the State of Arkansas*, 15 Howard, 319, the Supreme Court of the United States uses the following language:

"It by no means follows, because a law affects only the remedy, that it does not impair the obligation of the contract. The 'obligation of a contract,' in the sense in which those words are used in the constitution, is that duty of performing it which is recognized and enforced by the laws. And if the law is so changed that the means of legally enforcing this duty are materially impaired, the obligation of the contract no longer remains the same."

In *Bronson* v. *Kinzie*, 1 Howard, 316, 317, the same court says:

"Whatever belongs merely to the remedy, may be altered according to the will of the State, provided the alteration does not impair the obligation of the contract. But if that effect is produced, it is immaterial whether it is done by acting on the remedy or directly on the contract itself. In either case it is prohibited by the constitution." * * "It is manifest that the obligation of the contract and the rights of the party under it, may, in effect, be destroyed by denying a remedy altogether; or may be seriously impaired by burdening the proceedings with new conditions and restrictions, so as to make the remedy hardly worth pursuing."

In *McCracken* v. *Hayward*, 2 Howard, 612, 613, the same court says: "Any law, which in its operation amounts to a denial or obstruction of the rights accruing by the contract, though professing to act only on the remedy, is directly obnoxious to the prohibition of the constitution." * * * "The obligation of the contract between the parties, in this case, was to perform the promises and undertakings contained therein; the right of the plaintiff was, to damages for the breach thereof, to bring suit and obtain judgment, to take out and prosecute an execution against the defendant till the judgment was satisfied, pursuant to the existing laws of Illinois. These laws giving these rights, were as perfectly binding on the defendant, and as much a part of the contract, as if they had been set forth in its stipulations in the very words of the law relating to judgments and executions."

And this court after citing the above passages from the last two cases, says:

"These decisions certainly establish the principle, that all legislation which materially affects the laws for the enforcement of a contract existing at the time it is made, impairs the obligation of the contract. * * To this extent the influence of the decisions meets with unqualified acknowledgment." *Nevitt* v. *Bank of Port Gibson* 6 S. & M. 523.

Chief Justice Parsons says in *Call* v. *Haggin*, 8 Mass. 430: "If the legislature of any State were to undertake to make a law *preventing the legal remedy* upon a contract lawfully made and binding on the party to it, there is no question that such legislature would, by such act, exceed its legitimate powers."

In *Tarpley* v. *Hamar*, 9 S. & M. 314, this court says: "That any legislation that might lessen the extent or efficacy of the remedy on existing contracts, or which changes or diminishes the force of existing liens, might be objectionable."

And these principles have been affirmed in this court in a more recent case, as follows:—

"It is too well settled to admit of question at the present day, * * that it is within the power of the State legislatures to regulate the remedy and modes of proceeding in relation to past, as well as to future contracts. This power is subject only to the restriction, that it cannot be exercised so as to take away all remedy upon the contract, or to impose upon its enforcement new burdens and restrictions which materially impair the value and benefit of the contract." *Briscoe* v. *Anketell*, 28 Miss. 371.

Let us now consider the character of the legislation now before us.

It is urged that it is within the legitimate powers of the legislature, because it pertains to the remedy. But is that its true character?

It contains no provision whatever in relation to the process or course of judicial procedure on suits which might have been instituted on the causes of action enumerated, but it interposes a positive interdict against the institution of any such suits. It does not attempt to make any new regulations in relation to the

prosecution of suits then pending, or any proceedings to be had therein, but absolutely prevents all proceedings in such suits for more than two years. Instead of modifying the remedies existing for the causes of action specified, or providing new remedies thereon, it takes away all remedies upon them, with a few exceptions, and *closes the courts* as to all remedies upon them, for a period exceeding two years. This can, with no propriety, be classed or justified as legislation *regulating remedies*, but is in effect a *denial of all remedy* upon the causes of action enumerated, for the time specified. It is, therefore, clearly within the principles above stated, and comes within the prohibition of the Constitution of the United States, and of the 19th section of our declaration of rights.

We will now consider the objection to the constitutionality of this act, based on the 14th section of the declaration of rights, which requires, " *that all courts shall be open, and every person, for an injury done him in his lands, goods, person or reputation, shall have remedy by due course of law, and right, and justice, administered without sale, denial or delay.*"

What is " due course of law," in this respect, is not left in uncertainty, but can be ascertained by other provisions of the constitution; and, accordingly, the 15th section of article 4 of the constitution requires that " a circuit court shall be held in each county of this State, at least twice in each year "; and the 7th section of the same article requires that " the High Court of Errors and Appeals shall be held twice in each year at such place as the legislature shall direct," etc. These requirements are positive and imperative, and are in furtherance of the provision of the declaration of rights, that " right and justice should be administered *without denial or delay.*" The plain intention was, that these *courts should be open* at least twice in each year, in order that every person should have full and free remedy, in the ordinary forms of law, for all injuries done him in any of his rights of person or of property. If this privilege is denied or prohibited by act of the legislature as to any of the rights of the citizen, it is as effectually a violation of the constitutional right as if the legislature had

enacted that these courts should be entirely closed; for the denial of the remedy, at the prescribed terms of these courts, is, in effect, the same, as to those rights and remedies, as if the courts had been directed to be entirely closed. There cannot be a doubt that, if the legislature had passed an act requiring these courts to be *entirely closed*, until the first day of January, 1868, it would have been a violation of the provisions of the declaration of rights and of the constitution referred to; and it is equally clear, that an act requiring them to be closed as to certain specified rights and remedies of the citizen, is of the same character. For the citizen is thereby deprived of remedies positively guarantied to him by the organic law, the courts are not open to him for redress of his injuries, and right and justice are denied and delayed.

It appears, therefore, to be clear beyond doubt, that the act of the legislature in question is repugnant to these provisions of the declaration of rights and of the constitution of this State, and must be held inoperative and void for that reason.

But it is argued in support of the validity of the act, that the legislature is clothed with power to suspend the laws of the State, by the 15th section of the declaration of rights, which provides, "that no power of suspending laws shall be exercised *except by the legislature or its authority*"; and that the act in question is but an exercise of the power thus granted.

It must be conceded that this recognizes in the legislature the power to suspend *the laws* in general. But this recognition of power must be so construed as to harmonize with other provisions of the constitution, and will not admit of a construction which would defeat other specific provisions of the instrument and violate individual rights therein positively guarantied. The act in question does not suspend merely *the laws* of the State for the collection of debts; but, in our view, it contravenes the provisions of the declaration of rights and of the constitution, and suspends the rights thereby positively guarantied, and the remedies thereby required to be enforced; and it cannot be pretended that, under a power to *suspend the laws*, the legislature has power to *transcend the constitution*, by

doing violence to the rights of person and of property thereby guarantied.

We have seen that these rights are positively guarantied to the citizen; and, to show how high and sacred they were regarded by the framers of the constitution, the conclusion of the declaration of rights ordains, that they, and other specified rights, are "excepted out of the general powers of government and *shall ever remain inviolate.*" They were, therefore, emphatically placed beyond the power of the legislature.

Whilst it is true, therefore, that the legislature has the power to suspend the laws generally, it has no power to suspend the rights of person and of property guarantied to the citizen in the declaration of rights, and required by the constitution to be enforced at stated times; for that would be to *suspend the constitution.*

It is a delicate duty, under any circumstances, for this court to pronounce an act of a co-ordinate department of the government unconstitutional and void; and the duty is especially painful when the act proceeded, as this evidently did, from the well-meant policy of relieving, as far as might be, the pecuniary distresses and prostration of a people unparalleled in all our history—a state of things which appeals almost irresistibly to every benevolent mind, in which we all sympathize, and by which the interests of us all are most seriously affected. But, sitting here as the court of last resort of the State, and charged by the constitution with the duty to support that constitution and to sit in judgment upon the constitutional validity of the acts of the other departments of the government, we are not permitted to yield to feelings of delicacy to the legislature, or of personal sympathy for the misfortunes of our people when called on to discharge this high duty; but we are bound, by the most solemn obligations, to respond, truly and in the exercise of our best judgment, to the question, whether the act is in violation of the Constitution of the United States or of this State. If this question were merely doubtful, we should defer to the wisdom of the legislature and act upon the presumption that the act is within their legitimate powers. But

New Orleans, Jackson and Great Northern R. R. *v.* Moore.

when it is the clear and deliberate conviction of our judgments that the act is repugnant to either of these constitutions, we must perform the duty committed to us and pronounce our judgment accordingly. Convinced as we all are, for the reasons above stated, that such is the character of the act of the legislature in question, we must hold it to be inoperative and void as to the case presented in this record; and the motion before us must be overruled.