H. S. Stephenson, Administrator, *v.* Jane Osborne.

1. Husband and wife: deeds of separation, validity of and upon whom binding.—A deed of separation made between the husband and wife alone is void; and valid, when made through the agency of a trustee acting for the wife, and when so made, binding alone upon the husband and trustee.

2. Same: capacity of the wife to contract.—A married woman, as a general rule, can make no contract, and the exceptions to the rule must be created by positive law. She has no capacity to release or convey her claims on her husband's estate, in consideration of a separation, nor to bind herself by the covenants of her trustee in a deed of separation.

3. Contracts: obligation: remedy.—Whatever belongs to the obligation of a contract, that is, to its validity, construction, effect and discharge, is governed by the law in existence at the time it was made. The remedy for the breach of the contract does not constitute a part of its obligation, and, except in cases of a peculiar character, is subject to modification and repeal. *Coffman* v. *Bank of Kentucky*, 40 Miss. R.

4. Exemption laws: power of legislature to change.—Exemption laws operate on the remedy for the breach of contracts, and the legislature has the power to change them according to their own views of policy and humanity so as to effect the remedy upon existing contracts, but not to the extent to render it nugatory and impracticable.

5. Same: case in judgment.—The widow of Osborne, who died after the passage of the exemption law of November, 1865, claimed the personal property of her deceased husband exempted by the act. The administrator of the husband resisted the claim on the ground that the personal property was insufficient to pay debts created before the passage of the law. Held—That the widow was entitled to the property exempt from execution and attachment by the act of November, 1865, and that the legislature had the power to pass exemption laws so as to affect existing contracts.

Appeal from the Probate Court of De Soto county. Hon. J. B. Morgan, judge.

*White* and *Chalmers*, for appellant, contended,

1. That articles of separation entered into between husband and wife, the latter contracting through the intervention of a trustee, are binding upon both. *Carter* v. *Carter*, 14 S. & M. 61; Clancy's Husband and Wife, 399, 400, 401, 402; *Hobbes* v. *Hiell*, 1 Cox; *Ross* v. *Willoughby*, 10 Price, 2; 2 East, 283; 1 Car. 36;

1 Bing. 349 ; 2 Barn. & Cres. 54 ; 3 Porter's Ala. R. 614 ; Bishop on Marriage and Divorce, 614 ; *Hutton* v. *Hutton,* 3 Barr. (Penn.) R. 100.

2. That the policy of our courts and statutes has been to extend and enlarge the powers of the wife and her capacity to contract with her husband. *Mangum* v. *Fennucane,* 38 Miss. R. ; *Allen* v. *Miles & Adams,* 36 Miss. R. 640.

3. That the legislature has no power to exempt property from debts already contracted, the very property exempted being that upon the faith of which the credit was given.

*Walter* and *Scruggs,* for appellee, contended,

1. That the deed of separation as to appellee is a nullity ; she never acknowledged it. *Garrison* v. *Fisher,* 26 Miss. R.

2. That if a trustee is a necessary party to a · deed of separation (and the authorities all hold this), then some proof is necessary that he also signed, sealed, and delivered the deed. This was nowhere done.

3. The deed of separation recites, that it is impossible for husband and wife to live together on account of dissimilarity in tastes and dispositions ; this was not a sufficient legal reason for separation. Where the deed discloses the causes of separation, and they are not sufficient, courts will not uphold them. Clancy's Husband and Wife, 623–4–5 ; Shelford on Marriage and Divorce, 31 Law Library, 371.

4. The question of sustaining articles of separation is *res integra* as to this court. Courts of the highest authority have declared against them, as violative of the good morals of the country, and have only tolerated them because they were bound by precedents in their own courts. Bishop on Divorce, 3 Ev. ; Shelford on Marriage and Divorce, 31 Law Library, 361–2 ; 2 Bos. & Pul. 107 ; 8 Term R. 546 ; 11 Vesey, 537 ; 2 Mer. 268 ; 2 Hill R. 260 ; 25 Wend. 77.

We are told that the court is already bound by a precedent in *Carter* v. *Carter,* 14 S. & M. 59. That is a mistake. The remarks of Justice Clayton, in delivering the opinion of the court, are *obiter dictum.* The contract in that case was merely ver-

bal, and is declared to be a nullity. All that follows is but a simple statement of what other courts have decided, and *without an expression of opinion on them.* We insist that this is a new question in this State, and we insist that no new causes of divorce shall be introduced by judicial decisions, and the frightful calamities of Connecticut and Indiana be foisted on our people. This court has expressly pretermitted an opinion on the subject in *Mills* v. *Richards,* 34 Miss. R. 77.

5. But we insist that defendant in error could neither make, nor be bound by, any covenants of a separation deed. Almost every reported case has been founded on the application of the wife seeking the benefit of the deed. The husband can bind himself to the wife, as an adult may contract with an infant; but both the wife and infant may avoid them.

Wm. Maddox, vol. 1, p. 306, says "that the court has never decreed a separation between husband and wife, and compelled the husband to pay a separate maintenance to his wife, without some agreement for the purpose. * * * The wife certainly is not bound in any degree by a deed of separation, and a specific performance could not be enforced against her."

The same doctrine was held in *Walker* v. *Walker,* 7 Yerg. 283. The same position seems to be held by Wm. Jacobs, in a note stated in sec. 3, ch. 8, p. 354-5, in 2 Bright's Husband and Wife.

As to the second assignment of errors, we only reply, that the exemption law of 1865 was the law at the date of Osborne's death. We do not insist that that law is constitutional as to pre-existing creditors, if the estate is insolvent. But there is only $500 of debts, and *no allegation or proof of insolvency.* The only allegation is, that defendant in error gets all the personal property. It is not even contended that she gets all the personal assets,—the real estate is not even alluded to.

*White & Chalmers,* in reply, contended that the case of *Garrison* v. *Fisher,* 26 Miss., has been much weakened, if not entirely destroyed, by the case of *Love* v. *Taylor,* 26 Miss. 567.

That Mrs. Osborne, when examined with her husband, acknowledged that "she signed, sealed, and delivered the deed."

ELLETT, J., delivered the opinion of the court.

The warrant of appraisement of the estate of Isaac Osborne, deceased, issued in February, 1866, commanded the appraisers to set apart to the widow and children such personal property of the decedent as was exempt by law from execution. The appraisers disregarded this direction, and appraised all the personal property as belonging to the estate. The appellee, the widow of the decedent, filed exceptions to the action of the appraisers in this respect, and prayed that the matter be referred back to them, with instructions to set apart the exempt property, and the year's provision as contemplated by law. The appellant filed an answer to the exceptions, alleging that in 1859 the decedent and the appellee had agreed to live separate and apart, and had, together with J. P. Lewis as trustee for the said appellee, executed a deed of separation, dated February 5, 1859, whereby they mutually relinquished forever all claim to the property of each other. That at the time of the separation, appellee was possessed of more property than her husband; that the home at which they were then living belonged to her; and that she still owned it; that the parties separated immediately upon the execution of said deed, and never afterwards lived together as man and wife; that all the stipulations of the deed were faithfully carried out and executed by all parties, during the life of decedent, who died in January, 1866. And on the ground of these facts it is denied that appellee has any claim to the exempt property, or other property of decedent.

The deed of separation is made an exhibit with the foregoing answer. It purports to be made between Isaac Osborne of the first part, Jane Osborne of the second part, and John P. Lewis of the third part. It recites the marriage in July, 1857, and the agreement to separate, and then proceeds as follows : " They have therefore agreed and covenanted between and with themselves, and with the said John P. Lewis, trustee for the said Jane Osborne, that they will separate, and live apart from each other. And the said party of the first part hereby covenants with the other parties, that he will, and he doth hereby forever

relinquish all claim to the property, real and personal, of the said party of the second part, which he now or may hereafter have, in law or equity, as her said husband, and that he will never attempt to exercise any fight or control over her as his wife. And the said party of the second part hereby covenants and agrees with the other said parties, that she will and doth hereby forever relinquish all claim to the property, real and personal, of the said party of the first part, which she may now or hereafter have, in law or equity, as his wife."

There are also clauses providing for the repayment to the husband of money advanced by him to take up the debts of his wife, and for a division of the provisions on hand, but these are immaterial to the present case.

The deed purports to be signed and sealed by all the parties, and is acknowledged by the parties of the first and second part alone. They severally acknowledged that they signed, sealed, and delivered the deed, on the day and year therein mentioned, as their own act and deed; but on the private examination of the appellee she acknowledged only that she "signed" the deed, omitting the words "sealed and delivered." In other respects the acknowledgment is in due form.

The appellee demurred to the answer to her exceptions, and on hearing the Probate Court sustained the exceptions, and remanded the appraisement to the appraisers, with instructions to set apart to the widow the exempt property under the law of the 28th of November, 1865, or the value thereof, if the same had been sold; also a year's allowance in provisions, or money to purchase the same.

The appraisers having made their report in pursuance of this order, setting apart to the widow the proceeds of the exempt property which had been sold, and making an allowance in money for the purchase of provisions, the appellant filed exceptions to the report, on the ground that the exempt property was allotted under the act of November, 1865, and that the allowance to the widow consumed the whole personal estate of the deceased, the estate being indebted to various persons for debts contracted before the passage of the said act.

These exceptions were overruled, and the report of the appraisers confirmed and approved.

The appellant assigns for errors :

1. The allowance to appellee (the widow of the decedent) of the property, exempt from execution, belonging to the estate, she having by deed of separation, in the lifetime of her husband, relinquished all claims upon his estate.

2. The setting apart of the exempt property under the provisions of the act of November, 1865, there being debts due by the estate, contracted before the passage of that act, and it being incompetent for the legislature to enlarge the exemptions, so as to defeat the collection of debts previously contracted.

1. The first error assigned depends upon the validity and effect of the deed of separation.

This involves a question that has greatly exercised the English courts.   Lord Eldon, Lord Kenyon, and other distinguished judges, in the courts of law and equity, have not hesitated to declare that if the matter were *res integra*, they would not recognize the validity of any agreement for a separation between a husband and wife, and have denounced them as a violation of fundamental principles of public policy.   But they have found the contrary doctrine too firmly established in the courts, by the *dicta* of earlier judges, long acquiesced in, to allow of its being overturned, although the foundation upon which it rests has been severely shaken.   The ecclesiastical courts, indeed, treat all such agreements as null and void, and will enforce suits for the restitution of conjugal rights, in defiance of the conditions of deeds of separation.   Courts of equity, even, will not decree the specific performance of an agreement to live apart, but they will enforce the payment of the allowances stipulated, in such instruments, to be paid by the husband to his wife, and other covenants entered into by him in consideration of a separation. But an agreement of this character, made between the husband and wife alone, is void, on account of the incapacity of the wife to bind herself by contract, or to take anything by deed or contract directly from her husband.   Agreements of separation between husband and wife are only valid when made through the

Stephenson *v.* Osborne.

agency of a trustee acting for the wife. The husband will in such cases be bound by his covenants or conveyances to the trustee, for the benefit of his wife, and the trustee will be bound by any covenants entered into by him, on the part of the wife, to indemnify the husband against liability for her support, or for her debts, and against her claims on his property. A married woman, as a general rule, can make no contract. She cannot be estopped by her covenant, nor bound by her deed of conveyance. The exceptions to this rule must be created by positive law. Thus, by our statutes, a married woman may purchase property with her own money, and may make certain contracts, binding on her separate estate, for her support, or the support, management and improvement of such separate property. Rev. Code, 336, art. 24 & 25. She may convey her separate estate, real or personal, by deed, jointly with her husband, and, by implication, she may incumber it in like manner, to the extent of her income, for her husband's debts ; and in the case of a conveyance of real estate, at least, she will be bound by her covenants of warranty. Rev. Code, 307, art. 4; 335, art. 23. She may relinquish her right of dower in her husband's land, by deed executed jointly with him, or by herself alone, where the land has been previously conveyed by her husband. Rev. Code, 313, art. 32. But such a release of dower can only be made in aid of a conveyance by her husband to a third person. With such exceptions as are here stated, a married woman cannot bind herself by any covenant, nor can she be bound by the covenants of her trustee in a deed of separation ; nor can she, in consideration of such separation, convey or release to her husband her claims on his estate. In support of these principles, we need only refer to the authorities, without pretending to quote from them. *Carter* v. *Carter*, 14 S. & M. 59 ; *Mills* v. *Richards*, 34 Miss. 77 ; *Lord St. John* v. *Lady St. John*, 11 Vesey, 526 ; *Marshall* v. *Button*, 8 T. R. 545 ; *Carson* v. *Murray*, 3 Paige, 483 ; *Rogers* v. *Rogers*, 4 Paige, 516 ; 2 Story's Eq. Ju. sec. 1427 & 1428 ; 2 Kent's Com. 176 ; Shelford on Marriage and Divorce, chap. vi. sec. 1 & 2 ; Roper on Husband and Wife, chap. xxii. p. 269, and notes ; Clancy on Husband and Wife, chap. iv. p. 397.

The cases of *More* v. *Ellis*, Bunbury, 205, and *Brighton* v. *Chapman*, 2 Anstruther, 345, are relied on as authority for the position that the wife is personally bound by a deed of separation. But they do not sustain such a general proposition. In both those cases bills were filed against the trustees under the articles of separation, by the husband, to enforce the payment of an allowance covenanted by the trustees to be paid to him out of property of the wife, which, in pursuance of the terms of the separation, had been transferred by the wife to the trustees for that purpose. By the rules of the English chancery, a married woman, as to her separate property, is regarded as a feme sole, and has the absolute power of disposition over it. The transfer of any portion of her property to trustees, for the benefit of her husband, upon an agreement of separation, seems to have been considered in those cases free from objection, and no question was raised as to her power to make it. The defence by the trustees was rested, in the case of *More* v. *Ellis*, on the ground that the settlement was obtained by duress, and in the other case on the ground that the complainant had molested his wife, contrary to his covenant, and had thereby forfeited his annuity. The case of *Hutton* v. *Hutton*, 3 Penn. Rep. by Barr. 100, is not in harmony with the general current of the authorities, and is at variance with the former rulings of this court, in the cases already cited.

In the case now under discussion, the personal covenant of the wife, made with her husband and the trustee, that she *will* and *doth* thereby forever relinquish all claim to the property of the husband, is relied on as opposing a bar to the assertion of her claim. If operative at all, it must be either as a covenant with her husband, having the effect of a legal estoppel, or as a release to her husband of her dower and distributive share of his estate; and in either aspect it cannot have the effect contended for, and cannot operate either as an estoppel or as a release.

We are therefore of opinion that the deed of separation did not preclude the appellee from asserting her claim to the estate of her deceased husband.

2. The second error assigned is that the allotment of the exempt property was made under the act of November 28, 1865, whereas there were debts due by the decedent, contracted before the passage of that act.

The act alluded to (Pamphl. p. 137) declares " that the several exemption laws of this State be and the same are hereby so amended that hereafter the following described property, real and personal, shall be exempt from seizure and from sale, under execution or attachment ; " and then follows a statement of the property so exempt.  The third section of the act provides " that all property, real and personal, exempted by the provisions of this act, upon the death of the husband shall descend to the widow, as the head of the family, during her widowhood, for the use and benefit of herself and children, &c."  The eighth section provides that the act shall take effect and be in force from and after its passage.

The husband died in January, 1866, after this act took effect, and the statute applied to the case, unless there is something in the objection made in regard to its influence upon the rights of the creditors of the estate, whose debts accrued before the passage of the act.   And in this view it is insisted that the act cannot, consistently with fundamental constitutional principles, receive a construction that would impair the rights of the creditors as they existed at the date of their contracts.

Laws exempting certain descriptions of property from liability to be taken in execution for debt, are founded in a wise and beneficent public policy.  The State has an interest that no portion of its citizens shall be reduced to a condition of destitution, so as to be prevented from prosecuting useful industrial employments, for which they are fitted ; and that families shall not be deprived, by extravagance or misfortune, of the shelter and comforts necessary to health and activity.

Nor is such legislation usually regarded, even when retrospective in its character, as obnoxious to constitutional objections.   There is a clear distinction drawn between *rights* and *remedies*, between the legal obligation of a contract and the proceeding appointed by law for its enforcement.   Whatever

belongs to the obligation of the contract, that is, to its validity, construction, effect and discharge, is governed by the law in existence at the time it was made, which enters into, and forms a part of it, and follows it whenever it may be sought to be enforced. But the remedy is, for the most part, the act of the lawmaking power, providing a mode of redress for the wrong occasioned by the breach of the contract. It does not necessarily constitute a part of the obligation of the contract; and except in cases of peculiar character, it is subject to the right of modification or repeal, which is the prerogative of the legisture. *Ralph Coffman et al.* v. *The Bank of Kentucky*, MS.

We have not met with an authority in which the constitutionality of exemption laws has been directly raised or decided, but they are put by judges of great distinction, as instances of laws operating on the remedy only, which the legislature may pass. Thus, Chief Justice Taney, in *Bronson* v. *Kinzie*, 1 Howard, 315, says: "Undoubtedly, a State may regulate at pleasure the modes of proceeding in its courts, in relation to past contracts, as well as future. It may, for example, shorten the period of time within which claims shall be barred by the statute of limitations. It may, if it thinks proper, direct that the necessary implements of agriculture, or the tools of a mechanic, or articles of necessity in household furniture, shall, like wearing apparel, not be liable to executions on judgments. Regulations of this description have always been considered, in every civilized community, as properly belonging to the remedy, to be exercised or not by every sovereignty, according to its own views of policy and humanity. It must reside in every State to enable it to secure its citizens from unjust and harassing litigation, and to protect them in those pursuits which are necessary to the existence and well-being of every community."

It would be difficult to add anything to the force of this reasoning. It was not, it is true, a point involved and decided in the cause, but it was assumed as an illustration of the case under discussion. The principle upon which the remarks of the Chief Justice were founded, has, however, been established beyond controversy, both in the Supreme Court of the United

States, and in this court. Where imprisonment of the body of the debtor was allowed, as a part of the remedy for the enforcement of contracts, it is settled that legislation which discharges the person of the debtor from actual custody in execution, and which releases his bail, who have become bound for his surrender of himself into custody, is valid and effectual, and is not in violation of any constitutional principle. In the case of *Struges* v. *Crowninshield*, 4 Wheaton, 200, Chief Justice Marshall says: "The distinction between the obligation of a contract, and the remedy given by the legislature to enforce that obligation, has been taken at the bar, and exists in the nature of things. Without impairing the obligation of the contract, the remedy may certainly be modified as the wisdom of the nation shall direct. Confinement of the debtor may be a punishment for not performing his contract, or may be allowed as a means of inducing him to perform it. But the State may refuse to inflict this punishment, or may withhold this means, and leave the contract in full force. Imprisonment is no part of the contract, and simply to release the prisoner does not impair its obligation."

Afterwards this question came up directly for decision, and the court in their opinion say: " Can it be doubted but the legislatures of the States, so far as relates to their own process, have a right to abolish imprisonment for debt altogether, and that such law might extend to present, as well as to future imprisonment? We are not aware that such a power in the States has ever been questioned. * * * This is a measure which must be regulated by the views of policy and expediency entertained by the State legislatures. Such laws act merely upon the remedy, and that in part only. They do not take away the entire remedy, but only so far as imprisonment forms a part of such remedy." *Mason* v. *Haile*, 12 Wheat. 370. The same question was before this court in the case of *Brown* v. *Dillahunty*, 4 S. & M. 713, in which, in reply to the position that the rights of the plaintiffs became vested under the law as it stood at the time of the execution of the bail bond, and could not, therefore, be impaired by a subsequent law, it was held

9

that the mere imprisonment of a debtor, as a means of enforcing payment, belongs to the remedy, and does not reach the contract, nor impair its obligation.

In reference to other cases belonging to the same general class, the Supreme Court of the U. S. have said: "It is within the undoubted power of State legislatures to pass recording acts, by which the elder grantee shall be postponed to a younger, if the prior deed is not recorded within the limited time; and the power is the same whether the deed is dated before or after the passage of the recording act. Though the effect of such a law is to render the prior deed fraudulent and void against a subsequent purchaser, it is not a law impairing the obligation of contracts. Such, too, is the power to pass acts of limitations, and their effect. Reasons of sound policy have led to the general adoption of laws of both descriptions, and their validity cannot be questioned." *Jackson* v. *Lamphire*, 3 Peters, 290. The doctrine here stated has been approved by express adjudication in this State, and recording acts, applicable to judgments already obtained, have been held not to impair the obligation of the contract, by operating upon the remedy, although new conditions were imposed upon the party, without the observance of which he would lose his right already acquired. *Tarpley* v. *Hamer*, 9 Smedes & M. 310.

If the legislature may take away the right to imprison the person of the debtor, which existed at the date of the contract, and at the time judgment was obtained upon it in a court of law, and may discharge him from custody, and release his bail, after his body has been actually taken in execution, it would seem to be difficult to frame an argument against the right of the legislature to exempt a portion of the property of the debtor from liability to execution for his debts, and to make such exemption apply to pre-existing contracts.

The legislature exercises this power according to its own views of humanity and sound policy. But it is not without its proper limit, and it may be abused. Every party is entitled to an adequate and available remedy for the enforcement of his contracts, and any legislation which impairs the value and

benefit of the contract, though professing to act upon the remedy, would impair its obligation. It is not competent for the legislature, under color of an exemption law, so to obstruct the remedy upon contracts as to render it nugatory or impracticable. An abuse of the legislative discretion in this respect would demand the interposition of the court. We do not undertake to intimate what would amount to such abuse; such a question would be one of great delicacy and difficulty. We only mean to say that the power of the legislature over this subject is not unrestricted by the constitution, and that cases may arise in which it might be the duty of the judiciary to arrest its exercise. *Nevitt* v. *Bank of Port Gibson*, 6 S. & M. 523; *Briscoe* v. *Antikell*, 28 Miss. 371.; *Ralph Coffinan* v. *Bank of Kentucky*, MS.

We think the court below did not err in directing the exempt property in the case to be allotted to the widow under the act of November, 1865.

Let the decree be affirmed.