[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 24 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 25 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 27 
The chattels which the plaintiffs have replevied were mortgaged to them by Wardell, the owner, on the 17th March, 1848, to secure the payment of $200 with interest, one-half in six months from the date and the residue in one year. The mortgage contained a provision that until default in payment Wardell was to remain and continue in the quiet and peaceable possession of the property mortgaged and the full and free enjoyment of the same, unless he or some other person or persons should attempt to sell, assign, secrete, remove or otherwise dispose of the said goods and chattels in any way whatever, in which case it should be lawful for the mortgagees to take immediate possession of the said goods and chattels and keep the same until default should be made and then to sell and dispose of the same. The mortgage passed the property in the chattels to the mortgagees, subject to be defeated by payment of the moneys secured; but the mortgagor retained the right of possession until either a default in payment should occur, or a breach of the condition before stated as to the removal of the property. Upon the happening of either of the contemplated events the mortgagees' right to the possession would become complete. (Mattison v. Baucus, 1Coms., 295, and cases there cited.) By the terms of the condition in the mortgage an attempt to do either of the acts specified would create a breach upon which the right of the mortgagees to the possession would arise. The seizure by the defendant under a distress warrant for rent in arrear, assuming for the present that the warrant was issued without lawful authority or not under a *Page 28 
right superior to that conferred by the mortgage, would be a breach of the condition. Such a seizure could only be made with a view to the transfer at least of the possession of the mortgaged chattels to some person other than the mortgagor, while the object of the condition was to preserve the property in the hands of the mortgagor, so that on default in payment the mortgagees might find the property in the hands of the party with whom they had contracted. It is therefore necessary to inquire what right the defendant possessed under the distress warrant by virtue of which the seizure was made. Wardell, the mortgagor, leased from one Simpson a farm of land for a term of years by a lease dated and made in 1845, which provided for the payment of certain rent, and contained a further agreement that if the lessee failed to pay the rent or any part of it when it became due the lessor might distrain or sue for the same and reënter said premises or resort to any other legal remedy; and in case of distress for non-payment the lessee consented and agreed that any property upon the premises, not excepting articles by law exempt from distress, might be taken to satisfy the rent in arrear. The warrant was executed by the defendant on the 3d of April, 1848, by the seizure of the chattels in question. Between the execution of the lease and the issuing of the warrant the legislature had passed an act entitled, "An act to abolish distress for rent, and for other purposes" (Laws of 1846, ch. 274), the first section of which is in these words: "Distress for rent is hereby abolished." The supreme court held that this act in its application to a lease like the present, existing at the time of its passage, was in violation of that clause in the constitution of the United States which forbids any state to pass a law impairing the obligation of contracts. The correctness of this determination is therefore to be considered.
It is not to be overlooked that the stipulations of the parties, with which the statute is supposed to interfere, *Page 29 
relate to the remedy for a breach of the principal provision of the contract which provides for the payment of the rent. That obligation the statute does not interfere with, but it may be enforced by all the means which the state furnishes for the enforcement of other contracts. In this particular the question presented in this case differs from that in any of the cases which have been considered in the supreme court of the United States. In those cases, the particular remedies for a breach of the main contract had not been agreed upon, and the questions were, either whether the obligation of the contracts was directly impaired by state legislation, or whether in legislation in respect to remedies they had not been so weakened in stringency as that the supreme court felt bound to say that, though in form altering the remedy, they in fact impaired the obligation itself. All the cases recognize the obvious distinction between impairing the obligation of the contract and altering the remedy for a breach of it, and acknowledge the power of the state over the latter, while maintaining its want of power to impair the obligation of the contract. (Bronson v. Kinzie, 1 How.,
315.)
If, therefore, the lease contained no stipulation between the parties as to the remedy to be had upon a failure to pay rent, it cannot be doubted that the act in question would be effectual to take away the right to resort to the legal process of distress. (Guild v. Rogers, 8 Barb., 502; Morse v. Goold, 1Kern., 281.) It places the contract for the payment of rent upon the footing of all other contracts, does not attempt to touch the obligation to pay, either as to the amount payable or the time when payment may be demanded, and does not afford to the debtor any special exemption of property from being taken on execution to satisfy the debt.
Is the case altered by the stipulations of this contract? In the view taken by the supreme court, the contract in substance contains a stipulation between these parties *Page 30 
that this state shall continue in force the legal process of distraining for rent. If this is a subject on which parties can contract, and if their contracts when made become by virtue of the constitution of the United States superior to the power of the legislature, then it follows, that whatever at any time exists as part of the machinery for the administration of justice may be perpetuated if parties choose so to agree. That this can scarcely have been within the contemplation of the makers of the constitution, and that if it prevail as law it will give rise to grave inconveniences, is quite obvious. Every such stipulation is in its own nature conditional upon the lawful continuance of the process. The state is no party to their contract. It is bound to afford adequate process for the enforcement of rights; but it has not tied its own hands as to the modes by which it will administer justice. Those from necessity belong to the supreme power to prescribe, and their continuance is not the subject of contract between private parties. In truth it is not at all probable that the parties made their agreement with reference to the possible abolition of distress for rent. The first clause of this special provision is that the lessor may distrain, sue, reënter or resort to any other legal remedy, and the second is that in case of distress, the lessee waives the exemption of certain property from the process, which was by law exempted. This waiver of exemption was undoubtedly the substantial thing which the parties had in view; but yet, perhaps, their language cannot be confined to this object, and it may therefore be proper to consider the contract as if it had been their clear purpose to preserve this legal remedy even if the legislature should think fit to abolish it. In that aspect of it, the contract was a subject over which they had no control. (Handy v. Chatfield,
23 Wend., 35.)
The question presented does not greatly differ in principle from Mason v. Haile (12 Wheat., 370), which was an action on a bond for the limits executed by one imprisoned for *Page 31 
debt and conditioned that he should remain a prisoner until lawfully discharged. He was discharged under a subsequent act of the legislature, providing for his particular case. The supreme court of the United States sustained the discharge apparently upon two grounds. The one that the states clearly possessed the right to abolish imprisonment for debt altogether, as well present as future imprisonment, because such laws acted merely upon the remedy. The other was that lawful discharge in the contract, meant not only such modes of discharge as at the time of making the contract were lawful, but also such modes as at the time of the discharge might be prescribed by law, and yet it is quite plain that the court would have found great difficulty in giving that meaning to the words of the contract, if the power of the state to abolish imprisonment for debt had not been beyond the control of the parties.
Other branches of this same act, forming part of the same scheme of public policy which the legislature had in view in the section now in question, were considered by the supreme court, inStocking v. Hunt (3 Denio, 274), and by this court, in VanRensselaer v. Snyder (3 Kernan, 299). In the first case no intimation is to be found of a doubt of the power of the legislature over the subject, and in the latter, the opinion of the court, delivered by Gardiner, C.J., proceeds upon the basis that the abolition of distress for rent was effected in all cases by the act in question.
The judgment should be reversed and a new trial ordered.
DENIO, C.J., COMSTOCK, MITCHELL, HUBBARD and WRIGHT, Js., concurred.
SELDEN and T.A. JOHNSON, Js., were of opinion that the right to distrain under the lease in question could not be taken away by the state legislature.
Judgment reversed. *Page 32