J. B. WATKINS v. MARSHALL H. GLENN *et al.*

55  417
f55  464
55  467
55  491
55  417
f77  672

1. OBLIGATION OF CONTRACTS—*Impairment of Remedy.* · Any subsequent law of the state which so affects the remedy as substantially to impair and lessen the value of the contract, is forbidden by article 1, § 10 of the constitution of the United States, which ordains that "no state shall . . . pass any . . . law impairing the obligation of contracts."

2. MORTGAGE SALE—*Retroactive Operation of Statute.* Chapter 109, Laws of 1893, concerning the sale and redemption of real estate, has no retroactive operation, and therefore does not apply to mortgage contracts existing at and before its passage. If the legislature intended the act to apply to such contracts, it violates article 1, § 10 of the constitution of the United States.

*Error from Harper District Court.*

ON March 1, 1886, *Marshall H. Glenn* and Lillie O. Glenn, his wife, executed and delivered their promissory note for $1,500 to the trustees of the Home for Friendless and Destitute Children, in the city of Wilmington, and at the same time to secure the payment of the note, they executed and delivered their mort-

27—55 KAS.

gage deed to the home upon the following-described real estate : The south half of the northwest quarter of section 12, township 32, range 7, west of the sixth principal meridian, in Harper county, in this state. The note and mortgage were subsequently assigned and transferred to *J. B. Watkins*, the plaintiff. This action was commenced in the district court of Harper county on the 14th of April, 1891, to foreclose and sell the mortgaged premises to pay the indebtedness secured thereby. On May 13, 1891, the defendants, Glenn and wife, filed the following amended answer, omitting caption :

"1. The defendants, Marshall H. Glenn and Lillie O. Glenn, for their answer to plaintiff's petition in the above-entitled cause filed, deny each and every allegation therein contained.

"2. These defendants, for a further answer to said petition, say and allege that the said note and bond sued upon in this action have been fully paid by these defendants long prior to the commencement of this action, and on or about the 1st day of March, 1888.

"3. These defendants further aver that said note, if any there be, was given for a loan of money, and that the interest on said loan was to be at the rate of 10 per cent. ; and the amount in the bond was to bear the rate of 7 per cent. interest, and 3 per cent. of said interest is represented by the mortgage and note held by the defendant, Thomas S. Moffett, and the interest on said bond is therefore usurious and illegal.

"4. These defendants further aver that said bond or note is non-negotiable, and all the facts above set forth were and always have been well known to the plaintiff herein.

"5. These defendants further allege that the plaintiff, J. B. Watkins, is a member of the American Banking Association, a combination and association having for its object and purpose the controlling, regulating and fixing the amount of money in actual circulation, and for the controlling, regulating and

fixing the rate of interest, and the rate of use and forbearance of money charged and to be charged by its members of their customers and borrowers; that said association is illegal, unlawful, and contrary to public policy; that by reason of the existence of said combination and its actions as aforesaid, in the furtherance of the object of said combination, these defendants have been injured and damaged, and their ability to pay and meet their contracts has been controlled. Wherefore, these defendants demand judgment against the plaintiff for costs of suit, and for such other and further relief as equity may require.''

Thomas S. Moffett, one of the defendants, filed an answer and cross-petition to recover $337.50 of Glenn and wife, and also to foreclose a mortgage upon the premises described in plaintiff's petition, executed on the 1st of March, 1886, by them to secure a note of $225 with interest. Glenn and wife filed an answer to this cross-petition. The mortgage executed and delivered to the home contained the following provision :

''It is further agreed, that in case of default in the payment of said bond or any part thereof, or any of the sums of money to become due herein specified, according to the tenor and effect of said bond, or in the case of the breach by the said party of the first part of any of the covenants or agreements herein mentioned by said first party to be performed, then and in that case the bond secured hereby shall bear interest at the rate of 12 per cent. per annum from date, and this conveyance shall become absolute, and the party of the second part be at once entitled to the possession of the said above-described premises, and to have and receive all the rents and profits thereof.''

Trial had before the court without a jury on the 29th of January, 1894. The court found that the allegations of the plaintiff's petition were true, and that there was due the plaintiff, as therein alleged, from

the defendants, Marshall H. Glenn and Lillie O. Glenn, $1,500 as principal and $952.55 as interest, aggregating $2,452.55, and that the mortgage in plaintiff's petition set forth was and is a first and prior lien on the premises described therein. The court further found that there was due to the defendant, T. S. Moffett, from Glenn and wife, $438 with interest, and that the mortgage set out in his petition was a second lien upon the premises. Subsequently, the court rendered personal judgments upon its findings against Glenn and wife, and for a foreclosure of the mortgaged premises, and a sale thereof to pay the judgment, interest and costs. The judgment or decree of foreclosure provided:

"It is hereby further ordered, adjudged and decreed, that the sheriff making said sale shall execute and deliver to the purchaser or purchasers of said mortgaged premises, or any part thereof, at said foreclosure sale, a good and sufficient certificate of purchase for the premises so sold, upon the confirmation of said sale, as provided by the laws of the state of Kansas, (Laws of 1893, ch. 109, §§ 1, 2, 26,) containing a description of the property purchased, and the amount of money paid by each purchaser, together with the amount of costs up to said date, and stating that, unless redemption is made within 18 months thereafter according to law, the purchaser, or his heirs or his assigns, will be entitled to a deed to the same; and that, upon the making and execution of such deed or deeds to such purchaser or purchasers, any of the defendants who may be in possession of said mortgaged premises, or any person or persons holding possession under, through or by them, or either of them, since the commencement of this action, shall immediately surrender the possession of said premises to such purchaser or purchasers, upon production of such sheriff's deed; that upon production of such sheriff's deed to said mortgaged premises, if the parties in possession of the same neglect or refuse to surrender the possession of

said premises to the purchaser at said sheriff's sale, a writ of assistance shall be issued by the clerk of the district court, upon the application of the purchaser at said sheriff's sale, directing the sheriff of said county to take possession of said mortgaged premises, and deliver the same to said purchaser.

"It is hereby further ordered, adjudged, and decreed, that from and after the execution of such deed or deeds, each and all of the defendants herein named shall be forever barred, both at law and in equity, from any right, title, lien or interest in, to, or against the mortgaged premises hereinbefore described."

Sections 1, 2 and 26 of said chapter 109 read as follows :

"SECTION 1. After sale by the sheriff of any real estate on execution, special execution, or order of sale, he shall. if the real estate sold by him is not subject to redemption, at once execute a deed therefor to the purchaser ; but if the same is subject to redemption, he shall execute to the purchaser a certificate containing a description of the property and the amount of money paid by such purchaser, together with the amount of the costs up to said date, stating that unless redemption is made within 18 months thereafter according to law, that the purchaser or his heirs or assigns will be entitled to a deed to the same : *Provided*, That any contract in any mortgage or deed of trust waiving the right of redemption shall be null and void.

"SEC. 2. The defendant owner may redeem any real property sold under execution, special execution or order of sale at the amount sold for, together with interest, costs, and taxes, as provided for in this act, at any time within 18 months from the day of sale as herein provided, and shall in the meantime be entitled to the possession of the property ; but where the court or judge shall find that the lands and tenements have been abandoned, or are not occupied in good faith, the period of redemption for defendant owner shall be six months from the date of sale, and all junior lien-

holders shall be entitled to three months to redeem after the expiration of said six months.''

'' SEC. 26. The sheriff shall at once make a return of all sales made under this act to the court; and the court, if it finds the proceedings regular and in conformity with law and equity, shall confirm the same and direct that the clerk make an entry upon the journal that the court finds that the sale has in all respects been made in conformity to law, and order that the sheriff make to the purchaser the certificate of sale or deed provided for in section 1 of this act.''

To the judgment, decree and order of the court directing the issuance of a certificate of purchase, under chapter 109, Laws of 1893, *J. B. Watkins*, the plaintiff below, excepted and brings the case here for review and reversal.

*W. J. Patterson*, for plaintiff in error :

The district court of Harper county erred in ordering the sheriff of said county to execute and deliver to the purchaser a certificate of purchase under the act of the legislature, (Laws of 1893, ch. 109, § 26,) because said law, if held by the court to apply to contracts entered into prior to its passage, violates article 1, § 10 of the constitution of the United States, which provides that ''no state shall . . . pass any . . . law impairing the obligation of contracts.'' This act of the legislature, if held to apply to contracts executed prior to its passage, impairs the obligation of the contract by changing the contract, which when entered into allowed the mortgagee to sell the land in default of payment six months after judgment, and cut off the equity of redemption at the sale, to a contract which allowed the mortgagor or owner of the equity of redemption to redeem the land within 18 months after the sale.

Let us first consider what is the obligation of a contract. Cooley, in his work on Constitutional Limitations, p. 285, gives the following definition :

"The obligation of a contract consists in its binding force on the party who makes it. This depends upon the laws in existence when it is made ; these are necessarily referred to in all contracts, and form a part of them as the measure of the obligation to perform them by the one party, and the right acquired by the other. There can be no other standard by which to ascertain the extent of either than that which the terms of the contract indicate according to their settled legal meaning ; when it becomes consummated, the law defines the duty and the right, compels one party to perform the thing contracted for, and gives the other the right to enforce the performance by the remedies then in force. If any subsequent law affect to diminish the duty, or to impair the right, it necessarily bears on the obligation of the contract, in favor of one party to the injury of the other ; hence any law which, in its operations, amounts to a denial or obstruction of the rights accruing by a contract, though professing to act only on the remedy, is directly obnoxious to the prohibition of the constitution." And cites *Bronson v. Kinzie*, 1 How. 316 ; *Ogden v. Saunders*, 12 Wheat. 259 ; *Mc-Cracken v. Hayward*, 2 How. 612.

Another definition is, the obligation of a contract, as that expression is used in the constitution, means the right to performance which the law confers on one party, and the corresponding duty of performance to which it binds the other. See 7 Lawson, Rights & Rem., § 351 ; *Larrabee v. Talbott*, 46 Am. Dec. 637.

Still another definition handed down by the supreme court of the United States is :

"The obligation of the contract, in the constitutional sense, is the means provided by law by which it can be enforced. . . . Whatever legislation lessens the efficacy of these means impairs the obliga-

tion. If it tends to postpone or retard the enforce-
ment of the contract, the obligation of the latter is to
that extent weakened.''

See *Louisiana v. New Orleans*, 102 U. S. 206 ; *Seibert
v. United States*, 7 S. C. Rep. 1190 ; *In re Copenhaver*,
54 Fed. Rep. 666.

It scarcely needs argument to show to the court that
the act of the legislature in question, as to contracts
existing at the time of its passage, violates the obli-
gation of such contracts under these definitions.
Language could not be clearer, nor its application
plainer, than the substance of these definitions to this
case. It is the first construction given by the earliest
interpreters of this particular section of our federal
constitution, and has been approved and reiterated
through all the cases in the supreme court down to
this time.

The case of *Bronson v. Kinzie*, supra, is cited and
followed in *McCracken v. Hayward*, 2 How. 612 ; *Gantly
v. Ewing*, 3 id. 707 ; *Howard v. Bugbee*, 24 id. 461 ;
*Scobey v. Gibson*, 17 Ind. 572. It is also followed in
*Bixby v. Bailey*, 11 Kas. 359, and *Ogden v. Walters*, 12
id. 283.

The rule has always been held to be the same
whether the statutory enactment be a stay law which
provides for a stay of execution before sale or a right
of redemption after sale. See *Sturges v. Crowninshield*,
4 Wheat. 200 ; *Aycock v. Martin*, 92 Am. Dec. (Ga.)
56 ; *The State v. Carew*, 91 id. 245 ; *Carroll v. Rossiter*,
10 Minn. 174 ; Bishop, Contr., §§ 571, 572 ; *Walker v.
Whitehead*, 16 Wall. 314 ; *Scobey v. Gibson*, 17 Ind.
580 ; *Rucker v. Steelman*, 73 id. 396 ; 7 Lawson, Rights
& Rem., § 3856 ; *Townsend v. Townsend*, 14 Am. Dec.
722 ; *January v. January*, 18 id. 211 ; *O'Brien v. Krenz*,
36 Minn. 136 ; same case, 30 N. W. Rep. 458 ; *Yeat-*

*man v. King,* 51 id. 721; *Phinney v. Phinney,* 17 Atl. Rep. (Me.) 405, and cases cited.

There is a distinction always recognized between laws which impair the obligation of contracts and laws which change only the remedy, and it is equally well settled under the authorities that where the remedy is made a part of the contract it cannot be changed by subsequent legislation.

In the case at bar a note and a mortgage are the contract. The mortgage provides for a specific lien upon certain lands. The law at the time the contract was made provides a means of enforcement by suit in court to foreclose the mortgage, and for a sale of the land under the waiver of appraisement in the contract six months after the rendition of the decree of foreclosure, and for the right to a deed at the confirmation of the sale.

Under the decisions cited it would seem to be almost beyond controversy that a law which postpones the right of possession, which holds open the right of redemption for a period of 18 months longer than the terms of the contract provide, which gives the rents and profits to the owner of the title contrary to the terms of the contract, does impair the obligation of the contract within the meaning of the provisions of the constitution of the United States.

No appearance for defendants in error.

The opinion of the court was delivered by

HORTON, C. J.: The question for our determination in this case is, whether chapter 109, Laws of 1893, relating to the sale and redemption of real estate, was intended by the legislature to operate retrospectively,

so as to apply to mortgage contracts existing at and before its passage. Involved in this is the further question whether, if the act was intended to apply to such contracts, it violates article 1, § 10 of the constitution of the United States, which ordains that "no state shall . . . pass any . . . law impairing the obligation of contracts." The contention on the part of the plaintiff is, that chapter 109 was not intended by the legislature to apply to mortgage contracts entered into prior to its passage, and that, if such were the intention of the legislature, the act is unconstitutional as to such contracts. It is admitted upon the part of the defendants below that if, under the provisions of the statute of 1893, there is any material change or impairment of the contract rights secured under the mortgage, however slight, it is unconstitutional. But the claim is that the statute acts on the remedy only ; that the plaintiff has under that act a substantial remedy to enforce the provisions of his mortgage ; and therefore that it is constitutional and was intended by the legislature to apply to all contracts, whether made before or after its passage. It is conceded —

"That the laws which subsist at the time and place of making the contract, and where it is to be performed, enter into and form a part of it as if they were expressly referred to or incorporated in its terms." (*Von Hoffman v. Quincy*, 71 U. S. 535.)

It has been ruled in *Seibert v. Lewis*, 122 U. S. 284 —

"That the remedy subsisting in a state when and where a contract is made and is to be performed is a part of its obligation, and that any subsequent law of the state which so affects that remedy as substantially to impair and lessen the value of the contract is forbidden by the constitution, and is therefore void."

Again, in *Louisiana v. New Orleans*, 102 U. S. 203, the court held :

"The obligation of the contract is impaired by such legislation as lessens the efficacy of the remedy which the law in force at the time it was made provided for enforcing it. Whatever legislation lessens the efficacy of the remedy impairs the obligation. If it tend to postpone or retard the enforcement of the contract, the obligation of the latter is to that extent weakened. The Latin proverb, '*Qui cito dat bis dat*' — 'He who gives quickly gives twice' — has its counterpart in a maxim equally sound — '*Qui serius solvit minus solvit*' — 'He who pays too late pays less.' Any authorization of the postponement of payment, or of means by which such postponement may be effected, is in conflict with the constitutional inhibition."

Whether the contract sued on is modified or affected by the act of 1893, if held to apply, is a test as to the constitutionality of the act. If that act lessens the value of the mortgage or its security, it cannot operate upon such a contract in existence at the time of its passage. The act provides that the mortgagor shall have 18 months from the date of sale to redeem ; that a receiver can only be appointed in case of waste ; that the income during the period for redemption, except what is necessary to keep up repairs and prevent waste, shall go to the owner or defendant in execution or the owner of the legal title. Under the express condition of the mortgage sued on, in case of default in the payment of the debt secured, the mortgagee is entitled "to have and receive all the rents and profits of the mortgaged premises to apply upon his note or bond." Under the former law, a receiver could have been appointed to take possession of the mortgaged premises, collect the rents and profits thereof, and apply the same, less expenses, to the satisfaction of the debt. The act of 1893 deprives the

mortgagee of this right, and therefore of a part of the security given by the very terms of his mortgage.

Again, the act carves out for the mortgagor, or the owner of the mortgaged property, an estate of several months more than obtainable by him under the former law, with full right of possession, and without paying rents, profits, or taxes. Under the former law, after a foreclosure and sale of the mortgaged premises, the purchaser was given actual possession as soon as the sale was confirmed and the sheriff's deed issued. Thereafter the mortgagor or the owner had no possession, title or right in any way to the premises. In the counties where the courts are almost continually in session, as Atchison, Shawnee, Sedgwick and Wyandotte, and in other counties of the state were there are frequent sessions of the courts, a sheriff's deed generally issues in a few days after the sale. To contend that the actual possession of the mortgaged premises by the mortgagor or owner for any specific period of time, whether it be for 6, 12 or 18 months, after a judicial sale, gives the same security to the mortgagee as the former law which permitted the purchaser of the premises under a decretal sale to take possession as soon as the sale was confirmed and the sheriff's deed issued, is to claim that the possession of real estate is of no value whatever. As was forcibly observed by ALLEN, J., in *Greenwood v. Butler*, 52 Kas. 424 :

"It cannot be said that a sale of lands with a right of possession remaining in the judgment-debtor for a year and a half thereafter is the same thing as a sale with a right to immediate possession on confirmation of the sale. It is simply the carving out and taking away from the estate originally decreed to be sold another estate limited for a year and a half. It diminishes the value of the lands to be sold by just exactly the value of the tenure, rent free, for a year and

a half. The fact that the judgment would still draw
interest does not affect the question as to the value of
the security to be sold for its satisfaction."

In our opinion, the obligation of the mortgage con-
tract in this case is substantially impaired by the act
of 1893, if that act operates upon contracts
1. Obligation of in existence at the date of its passage, as
contracts—
impairment it injuriously affects the value of the mort-
of remedy.
gage security. The ·act, therefore, if ap-
plied to past contracts, is unconstitutional and void.
We think this conclusion is fully supported by the
great weight of authority, and especially by the de-
cisions of the supreme court of the United States,
which are controlling in the interpretation of the pro-
visions of the federal constitution. In *Pounds v. Rodg-
ers*, 52 Kas. 558, it was ruled that —

"The sale of land for delinquent taxes under the
statute constitutes a contract between the purchaser
and the state, the terms of which are found in the law
then in force. All matters relating to the sale and
conveyance of land for taxes under any prior statute
must be fully completed according to the laws under
which they originated, the same as if such. laws re-
mained in force."

In *Bixby v. Bailey*, 11 Kas. 359, BREWER, J., speak-
ing for the court, in referring to the redemption law
of the 4th of June, 1861, observed :

"It is insisted that under the law in force at the
time of the decree and sale the debtor had two years
to redeem, and therefore the sheriff's deed was void.
The note and mortgage were executed before the re-
demption law and therefore unaffected by its provi-
sions."

The justice cited *Bronson v. Kinzie*, 1 How. 311.

In *Ogden v. Walters*, 12 Kas. 283, VALENTINE, J.,
stated :

"At the time the mortgage was executed in 1858

there was no law authorizing the redemption of land from a sheriff's sale; and the law of June 4, 1861, cannot have a retroactive operation so as to apply to said mortgage.''

In view of these expressions of this court, delivered by such eminent and painstaking jurists as BREWER and VALENTINE, and considering that § 1 of chapter 109 provides for deeds to issue at once on sales of real estate not subject to redemption and for certificates to issue on sales subject to redemption, we think the legislature did not intend that the provisions of the act of 1893 should apply to mortgage contracts existing at the date of its passage. No statute, however positive in its terms, is to be construed as designed to interfere with existing contracts, rights of action, or suits, and especially vested rights, unless the intention that it should so operate is expressly declared. And courts will apply new statutes only to future cases, unless there is something in the very nature of the case, or in the language of the new provision, which shows that they were intended to have a retroactive operation. (Potter, Dwar. Stat. 75; id. 162, 163, note.)

Sedgwick, in his work on the Construction of Statutes and Constitutions (2d ed.), after stating that retrospective or retroactive statutes, independently of certain exceptions, are within the scope of the legislative authority, yet says that ''such laws as a general rule are objectionable, and the judiciary will give all laws a prospective operation only unless their language is so clear as not to be susceptible of any other construction.'' (p. 173.) Again he says, ''The courts refuse to give statutes a retroactive construction unless the intention is so clear and positive as by no possibility to admit of any other construction.'' (p. 166.)

If the legislature intended the act to be retrospective in its operation so as to apply to prior mortgages the following decisions of the supreme court of the United States and the reasons given therein are conclusive that the act is unconstitutional and void as to such contracts : *Ogden v. Saunders,* 12 Wheat. 213, 327 ; *Green v. Biddle,* 8 id. 1–107 ; *Bronson v. Kinzie,* 1 How. 311 ; *McCracken v. Hayward,* 43 U. S. 608 ; *Gantly v. Ewing,* 3 How. 716 ; *Ex parte Christy,* 3 id. 328 ; *Clark v. Reyburn,* 8 Wall. 322 ; *Walker v. Whitehead,* 16 id. 314 ; *Howard v. Bugbee,* 24 How. 461 ; *Planters' Bank v. Sharp,* 17 U. S. 301 ; *Gunn v. Barry,* 15 Wall. 601 ; *Brine v. Insurance Co.,* 96 U. S. 627, 637 ; *Memphis v. United States,* 97 id. 293 ; *Kring v. Missouri,* 107 id. 233 ; *Butz v. City of Muscatine,* 8 Wall. 575 ; *Mobile v. Watson,* 116 U. S. 305 ; *Curran v. The State,* 15 How. 319 ; *Louisiana v. New Orleans,* 102 U. S. 206 ; *Seibert v. Lewis,* 122 id. 284 ; *Edwards v. Kearzey,* 96 id. 595.

As sustaining the constitutionality of chapter 109 to prior contracts, we are referred to *Insurance Co. v. Cushman,* 108 U. S. 51 ; *Morley v. L. S. Rld. Co.,* 146 id. 162 ; *Bank v. Francklyn,* 120 id. 747 ; *Curtis v. Whitney,* 13 Wall. 68 ; *Antoni v. Greenhow,* 107 U. S. 769. The cases mostly commented upon by counsel of defendants below are *Insurance Co. v. Cushman,* supra, and *Morley v. L. S. Rld. Co.,* supra. In the *Cushman Case,* the action was between the purchaser of the mortgaged property at the decretal sale and the party entitled to redemption. The mortgagee was not a party, or interested. The court ruled that the Illinois statute for 1879, reducing the interest from 10 per cent. to 8, was valid between the purchaser of mortgaged premises and the party entitled to redemption, although the mortgage was given before the passage of the statute.

Mr. Justice Harlan, in delivering the opinion in that case, said, among other things :

"Certainly the obligation of *that* contract was not impaired by the act of 1879, for it did not diminish the duty of the mortgagor to pay what he agreed to pay, or shorten the period of payment, or interfere with or take away any remedy which the mortgagee had, by existing law, for the enforcement of its contract. The statute in force when the mortgage was executed, prescribing the rate of interest which the amount paid or bid by the *purchaser* should bear as between him and the party seeking to redeem, had no relation to the obligation of the contract between the *mortgagor and the mortgagee.* The mortgagor might, perhaps, have claimed that *his* statutory right to redeem could not be burdened by an *increased* rate of interest beyond that prescribed by statute at the time he executed the mortgage ; but, as to the mortgagee, the obligation of the contract was fully met when it received what the mortgage and statute in force *when the mortgage was executed* entitled it to demand."

And after referring to *Edwards v. Kearzey,* 96 U. S. 595, and other prior decisions of the supreme court of the United States, the same justice remarked :

"These decisions clearly have no application to the case now before the court. The laws with reference to which the parties must be assumed to have contracted, when the mortgage was executed, were those which in their direct or necessary legal operation controlled or affected the obligations of such contract. We have seen that no reduction of the rate of interest, as between the purchaser of mortgaged property at decretal sale and the party entitled to redeem, affected or could possibly affect the right of the insurance company to receive, or the duty of mortgagor to pay, the entire mortgage debt, with interest as stipulated in the mortgage up to the decree of sale. And the result of the sale in this case shows that the company, as mortgagor, has received all that it was entitled to demand."

In this case there is no showing that the mortgagee can or will receive all that he is entitled to demand under the decree complained of. If the plaintiff in this case had received the full amount of his mortgage, with interest and costs, he would not be here. In the *Morley Case,* supra, the court ruled that a state statute, reducing the rate of interest upon judgments obtained within the courts of the state, is not, when applied to one previous to its passage, in violation of § 1 of the fourteenth amendment of the constitution of the United States. Mr. Justice Shiras, in delivering the opinion, observed :

"Interest on a principal sum may be stipulated for in the contract itself, either to run from the date of the contract until it matures, or until payment is made ; and its payment in such a case is as much a part of the obligation of contract as the principal, and equally within the protection of the constitution. But if the contract itself does not provide for interest, then, of course, interest does not accrue during the running of the contract, and whether, after maturity and a failure to pay, interest shall accrue, depends wholly on the law of the state as declared by its statutes. If the state declares that, in case of the breach of a contract, interest shall accrue, such interest is in the nature of damages, and, as between the parties to the contract, such interest will continue to run until payment, or until the owner of the cause of action elects to merge it into judgment.  .  .  .  It is contended on behalf of the plaintiff in error, as stated above, that the judgment is itself a contract, and includes within the scope of its obligation the duty to pay interest thereon. As we have seen, it is doubtless the duty of the defendant to pay the interest that shall accrue on the judgment, if such interest be prescribed by statute, but such duty is created by the statute and not by the agreement of the parties, and the judgment is not itself a contract within the meaning of the constitutional provision invoked by the plaintiff in error. The

most important elements of a contract are wanting. There is no *aggregatio mentium*. The defendant has not voluntarily assented or promised to pay. 'A judgment is in no sense a contract or agreement between the parties.' ''

These cases, and the other United States cases referred to to sustain the decree of the trial court, are clearly distinguishable from the federal decisions cited by us against the act of 1893, if it be given a retrospective operation.

Finally, it is suggested that, if chapter 109 is not retrospective, there will be great confusion in the courts in the mode of procedure in foreclosing and selling mortgaged property. But the act of 1893 itself specifically provides that in some cases real estate may be sold without redemption, and in other cases be sold subject to redemption, hence the act does not command uniformity of procedure. (Laws of 1893, ch. 109, § 1.) Further, the suggestion of confusion of procedure in the courts could be used as effectively against the decision in *Greenwood v. Butler*, supra, as in this case. There were many judgments rendered in this state before the passage of chapter 109, foreclosing mortgages upon real estate, where the sales did not occur until after the passage of the act. Yet this court held unanimously that the act had no retrospective operation as to judgments rendered before its passage. Therefore the argument concerning the confusion of procedure is one of degree only between judgments and mortgages existing prior to the passage of the act. We think such an argument is without substance.

The judgment of the district court will be reversed and the cause remanded, with direction to the court below to correct the decree complained of, and to order

that after sale and confirmation a sheriff's deed shall issue according to law.

JOHNSTON, J., concurring.

ALLEN, J. : I am clearly of the opinion that the legislature intended the act under consideration to apply to the procedure for the enforcement of contracts made prior to its passage. Section 25 reads : "The provisions of this act shall apply to all sales under foreclosure of mortgage, trust deed, mechanic's lien, or other lien, whether special or general, and the terms of redemption shall be the same." No language can be found anywhere in the act expressly excepting prior contracts from its operation.

Probably no clause of the federal constitution of the United States has occupied the attention of the courts more than § 10, article 1. It is easy to glean from the authorities language which would seem to afford a clear and unvarying criterion for the determination of every controversy that may arise. In the early case of *Sturges v. Crowninshield*, 4 Wheat. 196, it was said by Chief Justice Marshall, in defining the meaning of the word "obligation" as used in the constitution : "A contract.is an agreement in which a party undertakes to do, or not to do, a particular thing. The law binds him to perform his undertaking, and this is, of course, the obligation of his contract." This definition was cited with approval in *Ogden v. Saunders*, 12 Wheat. 318. It was there said : "The obligation does not inhere and subsist in the contract itself, *proprio vigore*, but in the law applicable to the contract." In *Planters' Bank v. Sharp*, 6 How. 301, it was said : " One of the tests that a contract has been impaired is, that its value has by legislation been diminished. It is not, by the constitution, to be impaired at all. This is not

a question of degree or manner or cause, but of en-
croaching in any respect on its obligation — dispens-
ing with any part of its force." And in *Edwards v.
Kearzey*, 96 U. S. 595, it was said that "the remedy sub-
sisting in a state when and where a contract is made,
and is to be performed, is a part of its obligation."
These expressions of the highest tribunal in the land
on a question of construction of the constitution of the
United States, concerning which its authority is bind-
ing on all state and federal courts, if given literal ef-
fect would determine the case in favor of the plaintiff
in error. An examination of the cases will show, how-
ever, that that tribunal has not adhered to any such
plain and simple rule. And the passage cited from
*Edwards v. Kearzey*, which is probably the strongest
case to be found in the books on that side of the ques-
tion, is immediately followed by this statement : "And
any subsequent law of the state which so affects that
remedy as *substantially* to impair and lessen the value
of the contract is forbidden by the constitution of the
United States, and therefore void." Other language
may be extracted from the cases leading to a diamet-
rically opposite result. In *Bronson v. Kinzie*, 1 How.
311, which is, perhaps, the leading case· on the sub-
ject of the foreclosure of mortgages, it was said :

" If the laws of the state passed afterward had done
nothing more than change the remedy upon contracts
of this description, they would be liable to no consti-
tutional objection, for, undoubtedly, a state may reg-
ulate at pleasure the modes of proceeding in its courts
in relation to past contracts as well as future. . . .
And although a new remedy may be deemed less con-
venient than the old one, and may in some degree
render the recovery of debts more tardy and difficult,
yet it will not follow that the law is unconstitutional."

That the legislature of a state, when not restricted

by provisions of the state constitution, has unre-
stricted power to determine what courts shall be
established, what abolished, to fix the forms and
modes of issuing and serving process, the times for
filing pleadings, for hearing and determining issues
raised, as well as the process and manner of enforc-
ing judgments and decrees, provided a remedy is still
afforded which will substantially secure the rights of
the parties, is affirmed in a great number of cases,
decided by both state and federal courts. This must
be so in the nature of things. The parties to a con-
tract have no power to create or perpetuate any par-
ticular arm of the government. The people in their
sovereign capacity, as framers of constitutions, or act-
ing through their representatives in the legislature,
determine all questions of general policy, regulate
the organization and procedure of courts as they deem
best for the general interest of the public. To say
that the parties to a contract have a vested interest in
the identical remedy afforded under the law as it
stands at the time the contract is made, would be to
render them superior to the law-making power, and
to place the government of the country in the hands
of creditors to such an extent that no change what-
ever could be made cutting off a particular remedy
until every past contract was fully enforced. The
real difficulty arises when we undertake to determine
what changes in the law have the effect substantially
to impair the obligation of the contract. To de-
termine what is mere matter of form and what is
substance might seem easy, but an examination of
the authorities discloses great difficulty in the prac-
tical application of a rule.

It is perfectly clear that the mere entry of a judg-
ment in favor of the creditor for the amount due him

may be no substantial remedy. The state must do more for him. It must force payment of the amount to the judgment by seizure of the person of the debtor or of his property. In semi-barbarous countries a common remedy is to seize the body of the debtor and sell him into servitude. The peonage of Mexico is the fruit of such a system. In the early history of the United States a *capias* for the body of the debtor was an ordinary writ issued on a judgment for money. In the case of *Mason v. Hale*, 12 Wheat. 370, it was held that "states have a right to regulate or abolish imprisonment for debt as a part of the remedy for enforcing the performance of contracts;" and this as applied to prior as well as subsequent contracts. Imprisonment for debt is mentioned in *Edwards v. Kearzey*, supra, as a relic of ancient barbarism rather than as a remedy to be applied in a civilized country. Yet that imprisonment is a potent means of enforcing the payment of debts is fully understood by every intelligent citizen, as well as by members of the bar; for we still retain in the code of civil procedure a remedy by arrest in cases of fraud. Formerly all property of the debtor, even to the most necessary household furniture, was subject to seizure and sale, often resulting in inflicting sore distress on the helpless family of the unfortunate or improvident debtor. A more enlightened policy has refused to employ the strong arm of the state in stripping the needy of the last vestige of property to satisfy the hard creditor. Laws affording a reasonable exemption have been held in numerous cases to be good as to past as well as future contracts. (*Morse v. Goold*, 11 N. Y. 281; *Stephenson v. Osborne*, 41 Miss. 119; *Taylor v. Stockwell*, 66 Ind. 505; *Rockwell v. Hubbell's Administrators*, 2 Doug. 197; *Sneider v. Heidelberger*, 45 Ala. 126;

*Hardeman v. Downer*, 39 Ga. 425; *Coleman v. Ballandi*, 22 Minn. 144.) One of the strongest cases of this kind is that of *Cusic v. Douglas*, 3 Kas, 123, where it was held that the homestead exemption given by the constitution could be maintained by the debtor as against a judgment rendered before the adoption of the constitution, when no such exemption existed. This case was decided before that of *Edwards v. Kearzey*, supra, where it was held by the supreme court of the United States that a change in the constitution of the state of North Carolina allowing a homestead exemption not exceeding $1,000 in value, and also exempting certain personal property from execution, was invalid as to past contracts. In an opinion concurring specially, Mr. Justice Clifford took occasion to say that the legislature would have power to exempt wearing apparel, implements of agriculture, tools of the mechanic, etc. The decision of the case was put on the ground that the exemption was excessive and unreasonable as applied to obligations existing prior to the adoption of the constitution.

Laws taking away the remedy of imprisonment for past debts have been upheld in the following cases: *Fisher v. Lackey*, 6 Blackf. 373; *Penniman's Case*, 103 U. S. 714; *Brunson v. Newberry*, 2 Doug. 38. Changes in statutes of limitations, provided a reasonable time is allowed, are universally upheld. (*Smith v. Packard*, 12 Wis. 371; *Kenyon v. Stewart*, 44 Pa. St. 179.) In the following cases the power of the legislature, through a change of remedy, to diminish in some degree the security of the creditor has been upheld: *Evans v. Montgomery*, 4 Watts & S. 218; *Bank of Albany's Appeal*, 31 Conn. 63; *Stocking v. Hunt*, 3 Denio, 274; *Conkey v. Hart*, 14 N. Y. 22; *Van Rensselaer v. Hayes*, 19 id. 68; *Watson v. Railroad Co.*, 47 id. 57. In the fol-

lowing cases enactments similar to the one under consideration, providing for the redemption of real estate sold under judicial process, have been upheld : *Davis v. Rupe*, 114 Ind. 588 ; *Iverson v. Shorter*, 9 Ala. 713 ; *Moore v. Martin*, 38 Cal. 428 ; *Holland v. Dickerson*, 41 Iowa, 367 ; *Berthold v. Fox*, 13 Minn. 501 ; *Butler v. Palmer*, 1 Hill, 324. In *Van Baumbach v. Bade*, 9 Wis. 559, it was held that an act of the legislature which provided that defendants in actions to foreclose mortgages, which were executed prior to its passage, should have six months' time in which to answer the complaint, and that the mortgaged premises should not be sold upon the judgments, except upon six months' previous notice of the time and place of sale, did not violate the provisions of the constitution of the United States. It was said in the opinion :

"If from sudden and unlooked for reverses or misfortune or any other cause, the existing remedies become so stringent in all or a particular class of actions that great and extensive sacrifices of property will ensue without benefit to the creditor or relief to the debtor, a relaxation of the remedies becomes a positive duty which the state owes to its citizens. The general welfare of the community is committed to its care and keeping, and on fundamental principles of justice it is bound by reasonable regulations to promote and protect it. In passing upon questions like the present, courts must look behind the statute itself, and take notice of the causes which led to its enactment, for otherwise they would be unable to determine whether its regulations are reasonable or not, or were demanded by the state of the times or the financial situation of the country."

In *Newark Savings Institution v. Forman*, 33 N. J. Eq. 436, an act providing that in foreclosure proceedings thereafter commenced no personal judgment should be taken was held good as to past contracts,

the remedy by action at law for the deficiency being still left.

The supreme court of Pennsylvania, in *Coxe's Executor v. Martin*, 44 Pa. St. 322, sustained a law providing that no civil process should issue or be enforced against any person in the military service of the state or United States, and ruled that the act extended to a writ of *scire facias* upon a mortgage, unless expressly prohibited by the act of the contracting parties, and that it was not unconstitutional as impairing the obligation of a contract.

In *Robertson v. Van Cleave*, 129 Ind. 217, a statute reducing the rate of interest which a purchaser might receive under a foreclosure sale was held not unconstitutional.

A critical examination of the cases will disclose the fact that the courts, in determining what amounts to a substantial impairment of the remedy, have entertained widely different views. All the cases concede that the legislature may make changes in the remedies. All concede that there is a limit it may not exceed without violating the federal constitution. No clearly-marked boundary-line beyond which the legislature may not pass has been, or in the nature of things can be, pointed out. Each case must be determined by itself.

In *Bixby v. Bailey*, 11 Kas. 359, but little consideration seems to have been given to this question, the case of *Bronson v. Kinzie*, 1 How. 311, only being cited; and in *Ogden v. Walters*, 12 Kas. 282, it was only necessary to hold that the decree on which the sale was made was valid until reversed. I have no inclination to criticize either of these cases. By the act of February 27, 1860, it was provided that, in all sales of real property thereafter to be made, the land

should be appraised, and should not sell for less than two-thirds of the appraised value. The act of June 4, 1861, gave the debtor the right to redeem at any time within two years after the day of sale. It would be exceedingly difficult to hold that these two acts taken together, or that the redemption act alone, where such an appraisement law was in force, did not materially diminish the value of the creditor's remedy. The legislature of Illinois, on the 19th of February, 1841, passed an act authorizing the debtor to redeem within 12 months, and a judgment-creditor within three months thereafter. On the 27th of the same month another act was passed requiring that the property be appraised, and providing that it should not be sold for less than two-thirds the ap-praised value. Prior to the enactment of these laws, the rights of the parties to a mortgage were determined according to the principles of the common law. The legal title was deemed to be in the mortgagee, the mortgagor having only an equity of redemption. It seems a little peculiar that mortgage contracts have never been enforced either by the courts of the United States or by those of England according to their terms. Mortgages do and always have conveyed in terms the title of the property to the mortgagee, following which there is a clause of defeasance providing that the conveyance shall become void if the money which it.is intended to secure be paid in accordance with its terms. At common law, the mortgagee was entitled to possession of the mortgaged property in case of default. His title, however, notwithstanding the express terms of the instrument, was never held to be complete and absolute. No matter what the terms or provisions of ,the mortgage, courts of equity have always held that if the conveyance was made

merely to secure the payment of a debt, it was a mort-
gage, and that even a default in the payment of the
money at the time specified would not, under any
circumstances, render the deed absolute, but that the
creditor might redeem within a reasonable time. To
obtain an absolute title, the mortgagee proceeded,
either by strict foreclosure to extinguish the equity of
the mortgagor, or in chancery to obtain a sale of the
mortgaged premises to satisfy his debt. The time
and manner of cutting off the equity of the debtor,
courts of equity always assumed the right to deter-
mine; it being considered that the creditor who ob-
tained payment of his debt and interest, even at a
later day than was specified in the mortgage, had all
he was entitled to in equity and good conscience.

The decision of *Bronson v. Kinzie,* supra, was placed
not merely on the ground that the value of the rem-
edy was impaired, but that the contract itself was at-
tempted to be changed. It is said in the opinion:

"As concerns the law of February 19, 1841, it ap-
pears to the court not to act merely on the remedy,
but directly on the contract itself, and to engraft upon
it new conditions, injurious and unjust to the mort-
gagee. It declares that although the mortgaged prem-
ises should be sold under the decree of the court of
chancery, yet that the equitable estate of the mort-
gagor shall not be extinguished, but shall continue for
12 months after the sale, and it moreover gives a
new and like estate, which before had no existence, to
the judgment-creditor, to continue for 15 months."

By the statute of Kansas in force prior to the execu-
tion of the mortgage in question in this case, it was
provided in what is now ¶ 4495, General Statutes of
1889: "No real estate shall be sold for the payment
of any money or the performance of any contract or
agreement in writing in security for which it may

have been pledged or assigned, except in pursuance of a judgment of a court of competent jurisdiction ordering such sale.'' Both strict foreclosures and sales under powers contained in mortgages are unknown in Kansas. The decisions of the supreme court of the United States cited in the foregoing opinion were in cases where no such statute was in force. It appears to me, also, that that court in its more recent decisions has been much more liberal than formerly in upholding the power of the legislatures of the states to change and modify remedies. In *Antoni v. Greenhow*, 107 U. S. 769, an act of the legislature requiring a taxpayer who sought to pay his taxes with interest coupons of state funding bonds, which were refused by the tax-collector, to pay his taxes in lawful money, and file his coupons in court before he could maintain *mandamus* to compel their reception, where there was no requirement of such payment by the law as it stood at the time the bonds were issued, and providing that in case the coupons were found to be genuine the money deposited should be returned, was held valid; following *Tennessee v. Sneed*, 96 U. S. 69.

The case of *Insurance Co. v. Cushman*, 108 U. S. 51, was a bill to foreclose a mortgage given by Cushman and wife to the insurance company on property in the city of Chicago. By the law in force at the time the mortgage was given, the mortgagor might redeem on payment of the sum for which the property was sold under foreclosure proceedings, with interest at 10 per cent. Subsequently an act was passed reducing the rate of interest in case of redemption to 8 per cent. It was held that—

'' Such reduction in the rate of interest did not impair the obligation of the contract between mortgagor and mortgagee, because the amendatory statute did

not diminish the duty of the mortgagor to pay what he agreed to pay, or shorten the period of payment, or affect any remedy which the mortgagee had by existing law for the enforcement of his contract.''

It was said in the opinion :

''The statute in force when the mortgage was executed, prescribing the rate of interest which the amount paid or bid by the *purchaser* should bear as between him and the party seeking to redeem, had no relation to the obligation of the contract between the *mortgagor* and the *mortgagee*. The mortgagor might perhaps have claimed that his statutory right to redeem could not be burdened by an increased rate of interest beyond that prescribed by statute at the time he executed the mortgage, but as to the mortgagee the obligation of the contract was fully met when it received what the mortgage and statute in force when the mortgage was executed entitled it to demand. The rights of the purchaser at the decretal sale, if one was had, were not of the essence of the mortgage contract, but depended wholly upon the law in force when the sale occurred. The company ceased to be a mortgagee when its debt was merged in the decree, or at least when the sale occurred ; thenceforward its interest in the property was as purchaser, not as mortgagee.''

It was held, further, that the possible diminution of the amount for which the mortgaged property might sell, subject to the right of redemption at the diminished rate of interest, did not sufficiently impair the remedy to render the act void as to the mortgage in suit.

In *Bank v. Francklyn*, 120 U. S. 747, it appeared that under the statute of Rhode Island the stockholders of a manufacturing company were made jointly and severally liable for all debts of the company until the whole amount was paid in, and that ''their persons and property may be taken therefor on any writ of attachment or execution issued against

the company for such debt in the same manner as on writs and executions against them for their individual debts.'' By a subsequent statute the right to so proceed was taken away, and it was provided that all proceedings to enforce the liability of a stockholder for the debts of a corporation shall be either by suit in equity or by an action of debt upon the judgment obtained against such corporation. It was held that this latter statute governed in proceedings to enforce past liabilities, notwithstanding the fact that it clearly operated to delay creditors.

In *Morley v. L. S. Rld. Co.*, 146 U. S. 162, it was held, affirming the decision of the court of appeals of New York, that a statute of that state reducing the rate of interest on judgments from 7 to 6 per cent. operated to reduce the rate of interest on a judgment rendered before the passage of the act, and that it was not a law impairing the obligation of contracts. The case last cited is a very strong one, upholding the power of a legislature to modify remedies.

In determining what remedies the state will afford creditors for the collection of their debts, the law-making power has a right to take into consideration all matters affecting the general conditions of the people, and so to temper its processes that while the creditor is given his just dues the debtor may not be needlessly ruined. As contracts, in general, can only be discharged by the payment of money, and as the state is called on to convert the property of the debtor into money, and pay it over to the creditor, why may not the legislature, in providing remedies, take into consideration those circumstances which every man of even ordinary intelligence cannot fail to note? The history of England and of the United States is full of instances where debts have have been contracted during a period of

great inflation of the currency, as was the case when private bank-notes circulated, which were not legal-tender money, and for the payment of which the government was not responsible, and as happened during the revolutionary war, when the states were flooded with continental currency, and later during the civil war, when treasury notes were substantially the only money in circulation, and coin was at a great premium. It is clearly apparent that debts, contracted when values of all property were greatly inflated by reason of an inflated currency, become a greatly-increased burden when payment is required from a contracted currency. When the values of all property are very greatly reduced, while the nominal amount of the obligation remains the same, the amount of real or personal property which the state must seize and sell in order to discharge the obligation may be very greatly increased. The hardship to debtors, and the undue advantage gained by the creditors who can acquire from the debt collected a much greater amount of property than could have been acquired at the time the debt was contracted, is apparent. On the other hand, instances corresponding in number may be cited where the creditor has been paid in a depreciated currency, and at a time when values were greatly inflated; thus, while nominally receiving the full sum due, they were, in fact, compelled to accept but a portion of the debt in discharge of the whole.

If matters affecting the currency of the country were due solely to the action of individuals, it might be argued with very great force that the legislature ought not to take such fluctuations into consideration; but when we consider that the kinds and character of circulating medium in use in any country depend almost wholly on legislation, when the medium for the

payment of debts and for the exchange of products is regulated wholly by the law-making power of the general government, it would seem that legislatures, in regulating the collection of debts, might and ought to take into consideration the general conditions which determine the ease or difficulty with which debtors in general will be able to discharge their obligations in money.   It is a fact well known to all that the country, at the time this law was passed, was feeling a serious depression in values, resulting from a long-continued policy on the part of the general government of contracting the currency.   Must the legislature remain blind to these conditions?   Must the courts ignore them?   It is true that the extent to which such conditions affect values is not susceptible of accurate measurement, and that courts ought not and cannot do otherwise than award payment in lawful money of the stipulated sum which the debtor has agreed to pay.   Nor has the legislature, in the act under consideration, attempted to vary by the slightest fraction the sum of money required to discharge a debt. All that it has undertaken to do is to permit the debtor, after his property has been sold by the sheriff, to redeem it within a stated time, and to permit other creditors also to redeem for the purpose of securing their claims.

A careful analysis of the law will also develop the fact that the changes made are far from being all in favor of the debtor.   Under the law as it stood before this act was passed, when there was no express waiver of appraisement contained in the instrument securing the payment of the debt, the law required that lands seized on execution, or to be sold under order of sale, must be first appraised by three householders, and could not be sold for less than two-thirds the ap-

praised value. In case there was a waiver of appraisement, the lands might be sold without valuation, but no execution could issue on the judgment until after the expiration of six months from its rendition. The sections of the statute containing these provisions are wholly repealed by the act of 1893. The effect of this repeal is to allow execution to issue at once in all cases, and the lands levied on to be sold without appraisement and without any restriction as to price, and the proceeds of such sale to be applied in discharge of the debt. In these particulars, it will be observed that important clogs in the way of a speedy collection of debts have been removed, leaving the case wholly different from that under the laws of Illinois, considered in *Bronson v. Kinzie*, supra, and of Kansas in the cases of *Bixby v. Bailey* and *Ogden v. Walters*, before mentioned. No right of the creditor, as a creditor, is taken away, postponed, or delayed, but rather, in a very great class of cases, the collection of his debt is expedited and made easy. The only change in the law which it can be said affects the creditor injuriously in any manner is that postponing the time when the purchaser may take a deed, and giving the debtor a right to the possession of the property in the meantime. This, however, falls clearly and entirely within the principle considered in the case of *Insurance Co. v. Cushman*, supra, and cannot possibly affect the creditor, except by reducing the price realized from the property.

The law in its principal features seems to be eminently just and commendable. It relieves the debtor of the expense of an appraisement; it allows a speedy sale, yet reserves to the debtor the right to redeem the land at any time within one year. Judgment-creditors may redeem from the purchaser without the expense

29—55 KAS.

of advertising a sale again, and a subsequent mort-
gagee may without suit also redeem. Thus the
various creditors of a debtor may, through the instru-
mentality of one sale, speedily made, obtain in the
order of the priority of their respective claims the
full benefit of the debtor's lands. The only question-
able feature of the law, which perhaps might be held
invalid without affecting the other provisions, is that
giving to the debtor the rents accruing between the
time of sale and the execution of a deed thereunder.
(*Insurance Co. v. Brouse*, 83 Ind. 62.)  Where the
security is found to be inadequate, possibly this pro-
vision ought not to be upheld as to past contracts.
Where the security is adequate, I perceive no objection
to the whole law.  Often in a case like that under
consideration, where there is a waiver of appraisement
in the mortgage, the delay in obtaining a deed under
foreclosure proceedings will not be nearly so great as
might at first appear.  Under the old law, six months
must elapse after the rendition of a judgment before
an order of sale can issue.  Then the property must be
advertised at least 30 days.  After the sheriff makes
his return, the sale must be confirmed by the court
before the deed can issue.  In most counties of the
state, it will be found that something near a year is
required to obtain a deed.  This is the length of time
given by the statute exclusively to the defendant,
when in possession of the land, for redemption, and
for six months thereafter the right extends to credi-
tors and mortgagees as well.  But where the lands
have been abandoned or are not occupied, the period of
redemption for the defendant is six months only, and
for the lienholders three months thereafter.  So, in
cases where the property is vacant, the remedy is more
speedy and better in all respects than was formerly

afforded.    If the law does not apply to past contracts, then sales for all debts contracted prior to its passage, where there is no waiver of appraisement, must be made in accordance with the old statute.    The property must be appraised and must sell for not less than two-thirds the appraised value.    Where appraisement has been waived, there must be a stay of six months after the rendition of judgment.

It seems that a statute so eminently fair and reasonable in its main features and provisions, and which affords in most instances an even better remedy for creditors than was before afforded, ought to be upheld ; that the legislature has not by modifying the remedy materially impaired the obligation of contracts ; and that the law should be followed in all cases whether the obligation was created before or after its passage.

